**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 206
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Counsel for Plaintiff and the Proposed Class***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAROLD BROWER, on behalf of himself, all others similarly situated, and the general public, <br><br> Plaintiff, <br><br> v. <br><br> CAMPBELL SOUP COMPANY, <br><br> Defendant. | Case No:  '16 CV 1005 BEN JLB <br><br> <u>CLASS ACTION</u> <br><br> **COMPLAINT FOR VIOLATIONS OF CAL. BUS. & PROF. CODE §§17200** ***ET SEQ.***; **CAL. BUS. & PROF. CODE §§17500** ***ET SEQ.***; **AND CAL. CIV. CODE §§ 1750** ***ET SEQ.***; **AND BREACH OF IMPLIED AND EXPRESS WARRANTIES** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Harold Brower, on behalf of himself, all others similarly situated, and the general public, by and through their undersigned counsel, hereby sues defendant Campbell Soup Company ("Campbell") and, upon information and belief, including through the investigation of his counsel, alleges as follows.

## INTRODUCTION

1. Campbell manufactures, markets, and sells to consumers Healthy Request Chunky Grilled Chicken & Sausage Gumbo soup ("Healthy Request Gumbo"). Healthy Request Gumbo contains artificial trans fat in the form of partially hydrogenated soybean oil.

2. The consumption of artificial trans fat substantially detriments health. Scientific studies demonstrate there is no threshold intake level of artificial trans fat that does not increase an individual's risk of heart disease. Trans fat has also been connected to increased risk of diabetes, cancer, and Alzheimer's disease. Simply put, artificial trans fat is unsafe for human consumption.

3. Notwithstanding the scientific consensus that artificial trans fat increases the risk of heart disease and other chronic morbidity, Campbell falsely and misleadingly markets Healthy Request Gumbo with numerous health and wellness claims intended to convince consumers the product is healthy.

4. By falsely and misleadingly labeling and advertising its Healthy Request Gumbo, Campbell leveraged the public's interest in health generally, and in heart health specifically, to create a demand among consumers for Healthy Request Gumbo that would not have existed absent Campbell's false and misleading advertising.

5. Plaintiff relied on Campbell's false and misleading advertising in purchasing Healthy Request Gumbo, and lost money as a result.

6. Plaintiff brings this action challenging Campbell's claims relating to Healthy Request Gumbo on behalf of himself and all other similarly-situated consumers in California, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

("UCL"), and False Advertising Law, *id.* §§ 17500 *et seq.* ("FAL"). Plaintiff further alleges that Campbell breached express and implied warranties under state law.

7.     Plaintiff seeks an order compelling Campbell to restore the amounts by which it has been unjustly enriched, and pay restitution, damages, and punitive damages as allowed by law.

## PARTIES

8.     Plaintiff Harold Brower is a resident of Escondido, California.

9.     Defendant Campbell Soup Company is a New Jersey corporation with its principal place of business at 1 Campbell's Place, Camden, New Jersey 08103.

## JURISDICTION & VENUE

10.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and because more than two-thirds of the members of the Class reside in states other than the state of which Campbell is a citizen.

11.     This Court has personal jurisdiction over Campbell because Campbell is registered to do business in California and conducts business within California and within this judicial district.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Harold Bower resides in and suffered injuries as a result of Campbell's acts in this district, many of the acts and transactions giving rise to this action occurred in this district, and Campbell (a) is authorized to conduct business in this district, (b) has intentionally availed itself of the laws and markets of this district through the promotion, marketing, distribution, and sale of its products in this district, and (c) is subject to personal jurisdiction in this district.

## FACTS

### I.     Artificial Trans Fat Causes Cardiovascular Disease, Type 2 Diabetes, and Other Chronic Morbidity

13.     A large, broad, and consistent body of scientific evidence shows that consuming artificial trans fat increases the risk of cardiovascular disease. This includes studies performed

2

under a broad range of test conditions, spanning different geographical regions and populations, under both controlled trial conditions and in free-living populations following their usual diets.

14.     For this reason, the most respected nutrition experts and expert panels uniformly conclude that artificial trans fat consumption is harmful to human health and increases the risk of cardiovascular disease.

15.     For example, the American Heart Association warns, "*trans* fats raise your bad (LDL) cholesterol levels and lower your good (HDL) cholesterol levels. Eating *trans* fats increases your risk of developing heart disease."[1]

16.     Similarly, the Department of Health and Human Services (DHHS) and U.S. Department of Agriculture's (USDA) jointly-issued Dietary Guidelines Advisory Committee Report states that "[t]he relationship between *trans* fatty acid intake and LDL cholesterol is direct and progressive, increasing the risk of cardiovascular disease."[2]

17.     The Institute of Medicine (IOM) likewise concludes that "there is a positive linear trend between trans fatty acid intake and LDL cholesterol concentration, and therefore increased risk of [Coronary Heart Disease]." The IOM further states that there is "no safe level" of trans fat intake because "any incremental increase in trans fatty acid intake increases the risk of CHD."[3]

18.     Trans fat causes coronary heart disease, a form of cardiovascular disease, primarily by "rais[ing] the concentration of the most dangerous form of serum cholesterol

---

[1]     Am. Heart Ass'n., *Trans Fat Overview*, *available at* http://www.americanheart.org/presenter.jhtml?identifier=3045792.

[2] Dep't of Health & Human Serv. & U.S. Dep't of Agric., *2005 Dietary Guidelines Advisory Committee Report*, Section 10.

[3] Institute of Medicine, *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Protein and Amino Acids (Macronutrients)*, chapters 8 and 11, National Academy Press, Washington, DC, pp. 335–432 (2002), *available at* http://www.nap.edu.

(LDL cholesterol)" and "lower[ing] a protective form of serum cholesterol (HDL cholesterol)."[4]

19.    These effects have been shown in both controlled intervention trials and observational studies.[5]

20.    For example, several crossover diet trials have shown that trans fatty acids "not only raise LDL cholesterol levels but also lower HDL cholesterol levels."[6]

21.    In addition to these controlled trials, epidemiologic or observational studies have found that trans fatty acid intake increases risk of CHD. Specifically, an absolute increase in trans fat consumption of 2 percent of energy is associated with an increase in risk of CHD between 36 and 93 percent.[7]

---

[4] Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 NEW ENG. J. MED. 94 (1999).

[5] *See, e.g.*, Peter M. Clifton et al., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*, 134 J. NUTR. 874 (2004) ("Metabolic [intervention] studies have clearly shown that trans fatty acids (TFAs) elevate [bad] LDL and lower [good] HDL cholesterol.").

[6] *See, e.g.*, A. Aro et al., *Stearic acid, trans fatty acids, and dairy fat: effects on serum and lipoprotein lipids, apolipoproteins, lipoprotein(a), and lipid transfer proteins in healthy subjects*, 65 AM. J. CLIN. NUTR. 1419 (1997); Nicole M. De Roos et al., *Replacement of Dietary Saturated Fatty Acids by Trans Fatty Acids Lowers Serum HDL Cholesterol and Impairs Endothelial Function in Healthy Men and Women*, 21 AM. HEART ASSOC. 1233 (2001) (healthy men and women who maintained a high-trans fat diet had 21 percent lower protective HDL levels than those on a high-saturated fat diet); M. Abbey & P. Nestel, *Plasma cholesteryl ester transfer protein activity is increased when trans-elaidic acid is substituted for cis-oleic acid in the diet*, 106 ATHEROSCLEROSIS 99 (1994) (Trans fatty acid "increases low density lipoprotein (LDL) cholesterol and decreases high density lipoprotein (HDL) cholesterol").

[7] Ascherio, A. et al, *Dietary fat and risk of coronary heart disease in men: cohort follow up study in the United States*, 313 BR. MED. J. 84 (1996); W. C. Willett et al., *Intake of trans fatty acids and risk of coronary heart disease among women*, 341 LANCET 581 (1993).

4

22. The consumption of artificial trans fat, therefore, is a serious public health issue and has grave consequences for Americans.

23. According to the Centers for Disease Control and Prevention (CDC), elimination of artificial trans fat from the food supply could prevent 10,000 to 20,000 coronary events and 3,000 to 7,000 coronary deaths annually.[8]

24. Further, while the evidence of the harmful effects of trans fatty acids is undeniable, they also "provide no known benefit to human health."[9]

25. In addition to increasing the risk of CHD, the consumption of trans fat also contributes to an increased risk in other ailments, including type 2 diabetes; breast, prostate, and colorectal cancer; Alzheimer's disease; and cognitive decline, among others.

26. For example, one study <u>found that every 2% increase in energy intake from artificial trans fat increases the relative risk of type 2 diabetes by 39 percent.</u>[10]

27. Another study showed 75 percent more women contracted breast cancer in the highest quintile of *trans* fat consumption than did those in the lowest.[11]

///

///

///

///

///

---

[8] W. H. Dietz & K. S. Scanlon, *Eliminating the Use of Partially Hydrogenated Oil in Food Production and Preparation*, 108 J. AM. MED. ASS. 143 (2012).

[9] Institute of Medicine, *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids* 423 (2005).

[10] Jorge Salmeron et al., *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*, 73 AM. J. CLIN. NUTR. 1019, 1023 (2001).

[11] Véronique Chajès et al., *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study*, 167 AM. J. EPIDEMIOLOGY 1312, 1316 (2008).

5

28.    In other studies, those in the highest quintile of *trans* fat intake had more than double the risk of developing prostate cancer than those in the lowest quintile,[12] and 86 percent greater risk of developing colorectal cancer.[13]

29.    Researchers have also found "increased risk of incident Alzheimer disease among persons with high intakes of . . . *trans*-unsaturated fats,"[14] and "[h]igher intakes of . . . *trans* fat since midlife . . . were [] highly associated with worse cognitive decline."[15]

30.    In sum, there is no question that consuming trans fat is extremely harmful and "[t]he scientific rationale for eliminating exposure to artificial *trans* fatty acids in foods is rock solid."[16]

31.    On this basis, in November 2013, the Food and Drug Administration (FDA) announced its tentative decision to ban artificial trans fat in food because "current scientific evidence . . . identifies significant health risks caused by the consumption of *trans* fat" and expert panels all conclude "there is no threshold intake level for industrially-produced *trans* fat that would not increase an individual's risk of [coronary heart disease] . . . ."[17]

32.    The FDA further noted that trans fat has been "connected to a number of other adverse effects on health," like "insulin resistance" and "diabetes risk," and may impair the

---

[12] Jorge Chavarro et al., *A Prospective Study of Blood Trans Fatty Acid Levels and Risk of Prostate Cancer*, 47 PROC. AM. ASSOC. CANCER RESEARCH 95, 99 (2006).

[13] L.C. Vinikoor et al., *Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas*, 168 AM. J. EPIDEMIOLOGY 289, 294 (2008).

[14] Martha Clare Morris et al., *Dietary Fats and the Risk of Incident Alzheimer Disease*, 60 ARCH. NEUROL. 194, 198-99 (2003).

[15] Elizabeth E. Devore et al., *Dietary Fat Intake and Cognitive Decline in Women with Type 2 Diabetes*, 32 DIABETES CARE 635 (2009).

[16] Julie Louise Gerberding, *Safer Fats for Healthier Hearts: The Case for Eliminating Dietary Artificial Trans Fat Intake*, 151 ANN. INTERN. MED. 137 (2009).

[17] 78 Fed. Reg. 67169, 67169, 67172 (Nov. 8, 2013).

6

growth of fetuses and breastfeeding infants. In sum, trans fat is unsafe "<u>under any condition of use in food</u>."[18]

33.    After considering comments, including from the food and beverage industry, on June 17, 2015, the FDA, "[b]ased on the available scientific evidence and the findings of expert scientific panels . . . made a final determination that there is no longer a consensus among qualified experts that partially hydrogenated oils (PHOs), which are the primary dietary source of industrially-produced *trans* fatty acids (IP-TFA) are generally recognized as safe (GRAS) for any use in human food." The FDA gave the food industry three years to remove all artificial trans fat from processed foods, with its ban effective June 18, 2018.[19]

## II.    As a Key Component of its Strategic Marketing Campaign, Campbell Leverages Health and Wellness Claims—and a Purported American Heart Association "Certification"—to Drive Sales of Healthy Request Gumbo

34.    Health and wellness claims are a crucial component of Campbell's strategic marketing campaign, which was and is designed to increase sales by leveraging the "wellness profile of our soups in a competitively advantaged way."[20]

35.    According to Douglas Conant, Campbell's President and Chief Executive Officer, "Wellness is a critical component of our corporate strategy," and "[w]ellness trends have started to place Campbell's and, in particular, our U.S. soup business onto a new growth trajectory."[21]

///

///

///

---

[18] *Id.* at 67172.

[19] 80 Fed. Reg. 34650, 34650 (June 17, 2015).

[20] Campbell News Release (Feb. 21, 2007).

[21] Campbell News Release (Feb. 22, 2006).

7

36.    Because of these "wellness trends," Campbell has intentionally attempted to "rebrand" itself as "one of the world's leading providers of healthy and nutritious foods."[22]

37.    Campbell's "Healthy Request" line of soups has been central to Campbell's attempt to reimage or rebrand itself as a health food company.

38.    In 2006, Campbell launched a major initiative to expand its "Healthy Request" line of soups. This expansion increased the number of "Healthy Request" soups, including introducing four varieties of "Chunky Healthy Request Soup."[23]

39.    The "Healthy Request" brand has been an effective driver of sales for Campbell, which stated in 2011 that "Healthy Request soups are some of the top performing varieties in Campbell's soup portfolio, with compound annual sales growth of 21 percent over the past five years."[24]

40.    To reinforce the image that "[w]ellness is central to Campbell's mission," the company created Campbell's Center for Nutrition & Wellness, which it describes as being "comprised of professionals in research, nutrition science, food and agricultural science, technology, culinary arts and communications." Campbell further states that, "[a]dvised by world class scientific researchers renowned in their fields of study, the Center serves as a nutrition communications resource for outreach to consumers, retailers, the health professional community and the media. The mission of the Center is to provide reliable, science based information about nutrition and wellness and the role of Campbell's brands in healthful lifestyles."[25] As part of this supposedly "reliable, science based" approach,

---

[22] Campbell's 2014 Corporate Social Responsibility Report, *Opportunities: Nutrition Awareness Overview*, *available at*
http://www.campbellcsr.com/Opportunities/nutritionawareness.html.

[23] Campbell News Release (Feb. 21, 2007).

[24] Campbell News Release (Oct. 20, 2011).

[25] Campbell News Release (Feb 22, 2006).

8

Campbell claims to "evaluate our products for nutrients that the government recommends to limit in the diet."[26]

41.    As another key component of its Healthy Request initiative, Campbell labels some of its products with American Heart Association (AHA) "certifications." As Campbell notes, "[a]mong the products that display the [AHA] Heart-Check mark are *all of our Campbell's Healthy Request soups*."[27]

42.    In order to participate in the AHA certification program, companies must pay a fee. The key incentive for these paid "certifications," according to the AHA, is that "[t]he heart-check mark is a great way to boost sales," because "[t]he heart-check mark drives purchase decisions."[28]

43.    Consistent with these AHA statements, studies have shown that the AHA "heart-check mark" increases sales by suggesting to consumers that an "independent" group has certified the healthfulness and heart healthfulness of the products bearing the mark.[29]

///
///
///
///

---

[26] Campbell Nutrition Center, *available at* http://www.campbellnutrition.com/nutritionist-corner/articles/heart-healthy-eating.

[27]    http://www.campbellnutrition.com/nutritionist-corner/articles/eat-healthy    (emphasis added).

[28] American Heart Association Food Certification Program, *Boosting product sales; Helping shoppers choose, Supporting your marketing strategy*, *available at* http://www.watermelon.org/assets/Retailers/AHAStandardsforRetailerInfo.pdf.

[29] *See id.* ("Shoppers want clear, simple purchase guidance from a trusted source. The American Heart Association heart-check mark increases product sales because seeing the mark on a package assures shoppers they are making a smart choice.").

*Brower v. Campbell Soup Company*
CLASS ACTION COMPLAINT

44.     According to Campbell, its effort to rebrand itself as a health food company by promoting its "Healthy Request" soup line and paying for AHA certifications resulted in "$2.5 Billion sales of healthy products in 2014."[30]

**III.    Campbell's Manufacture, Marketing, and Sale of Healthy Request Gumbo**

45.     For at least several years, Campbell has been selling Healthy Request Gumbo in food, mass merchandise, and club stores in the U.S. under its popular "Chunky" and "Healthy Request" lines of soup.

46.     Campbell packages Healthy Request Gumbo in either 18.8-ounce cans or 15.2-ounce microwaveable containers.

47.     Artificial trans fat is not a natural component found in any of the ingredients used in Healthy Request Gumbo. Rather, Campbell intentionally adds partially hydrogenated soybean oil, containing artificial trans fat, to Healthy Request Gumbo.

48.     During the class period, there have been available for sale at least two versions of Healthy Request Gumbo in cans, and three versions in microwavable containers. Despite slight, non-material alterations to the labeling, Campbell has consistently placed health and wellness claims directly on the label of Healthy Request Gumbo in an attempt to convince consumers that the product is healthy, despite that Campbell adds artificial trans fat to the product.

49.     In light of this, several health and wellness claims Campbell has used on the label of Healthy Request Gumbo, and which it continues to use, are misleading, including at a minimum, the following claims:

a.     **"Healthy Request" Claim:** The Healthy Request Gumbo label prominently claims that the product is a "Healthy Request," which expressly conveys that the product is healthy. This is misleading because the product contains artificial trans fat, which causes increased risk of cardiovascular disease, stroke, diabetes, and

---

[30] Campbell's 2014 Corporate Social Responsibility Report, Opportunities: Nutrition Awareness Overview, *available at* http://www.campbellcsr.com/Opportunities/nutritionawareness.html.

other morbidity, and therefore is *not* healthy, or at a minimum, not as healthy as Campbell suggests.

b.   **"Heart Healthy" Claim**: The Healthy Request Gumbo label prominently claims in multiple places that the product is "Heart Healthy." This claim is false, or at a minimum highly misleading, because the product, due to its artificial trans fat content, is actually detrimental to heart health.

c.   **Vignettes of Vegetables and Grains:** Campbell bolsters its health and wellness claims for Healthy Request Gumbo through the use of vegetable and whole grain vignettes designed to reinforce the perception among consumers and potential purchasers that the product is healthy, despite that it contains artificial trans fat.

d.   **"COOKED WITH CARE" Claim**: Campbell claims Healthy Request Gumbo is "COOKED WITH CARE," which misleadingly implies that the product is healthy and made with wholesome, quality ingredients, when in reality it contains artificial trans fat, which detriments human health.

e.   **"Made with Lean Chicken Meat" Claim**: Campbell bolsters its misleading health and wellness theme for Healthy Request Gumbo by claiming that the product is "Made with Lean Chicken Meat." Although perhaps literally true, this claim, in the context presented, misleadingly suggests the product is healthy and made with wholesome, quality ingredients, despite that it contains artificial trans fat, which causes increased risk of cardiovascular disease, stroke, diabetes, and other morbidity.

f.   **American Heart Association "CERTIFIED" Emblem and "Meets Criteria for Heart-Healthy Food" Claim**: To further deceive consumers into believing Healthy Request Gumbo is healthy, Campbell's places on its label an emblem claiming that the product is "CERTIFIED" by the American Heart Association (AHA) and "Meets Criteria For Heart-Healthy Food." Although it may be literally true that the product is so certified, or meets the qualifications for the certification, the AHA CERTIFIED emblem is nevertheless misleading because the product contains artificial trans fat; the AHA itself has stated that "[e]ating trans fats increases your risk of

11

developing heart disease."[31] The use of the AHA emblem is also misleading because it leads consumers to believe that the AHA independently approved the product, when in reality, Campbell merely paid the AHA to use the emblem. Moreover, Campbell deceptively omits and otherwise fails to disclose this information, which is material to reasonable consumers.

50.     In addition, while making these health and wellness claims, Campbell deceptive omitted material information from the Class regarding the presence and detrimental health effects of the artificial trans fat in Healthy Request Gumbo.

51.     In sum, the statements, images, and emblems described above and which appear on the Healthy Request Gumbo label, taken individually and especially in context of the label as a whole, are false and misleading because they suggest the product is generally healthy, and specifically heart healthy, which in reality, the product contains unhealthy artificial trans fat, and is in fact *detrimental* to heart health. Further, Campbell's failure to disclose that it paid for the AHA CERTIFIED emblem is a deceptive omission of material information, which Campbell had a duty to disclose to purchasers.

## IV.     Campbell's False and Misleading Labeling Claims and Material Omissions Regarding Healthy Request Gumbo Violate the Identical Provisions of California and Federal Law, and Render the Product Misbranded

52.     Campbell's deceptive statements as described herein violate federal and California food labeling regulations which deem a food misbranded if its label is "false or misleading in any particular." *See* 21 U.S.C. § 601(n)(1), 21 U.S.C. § 453(h)(1), 21 U.S.C. § 343(a), Cal. Health & Safety Code § 110390, 110660.

53.     Healthy Request Gumbo is further misbranded because its label "fails to reveal facts that are material in light of other representations." 21 C.F.R § 1.21. *See also* 21 U.S.C. § 601(n)(1), 21 U.S.C. § 453(h)(1), 21 U.S.C. § 343(a), Cal. Health & Safety Code § 110390,

---

[31]     American Heart Association, *Trans Fat Overview*, *available at* http://www.americanheart.org/presenter.jhtml?identifier=3045792.

110660. Specifically, Campbell fails to reveal that the AHA CERTIFIED emblem is a paid endorsement.

54.     According to the FDA:

> [E]ndorsements made for compensation by private organizations or individuals may be misleading to consumers. The agency is advising that when such endorsements are made, a statement should be included in close proximity to the claim, informing consumers that the organization or individual was compensated for the endorsement. Failure to divulge this information on a label that bears a paid endorsement would cause the product to be misbranded under sections 403(a) [codified at 21 U.S.C. § 343(a)] and 201(n) of the act for failure to reveal a fact that is material. 58 Fed. Reg. 2478, 2485 (Jan. 6, 1993).

55.     In violation of food labeling laws, Campbell paid to receive the AHA CERTIFIED endorsement and placed it on the Healthy Request Gumbo label without disclosing that it was in fact a paid endorsement.

56.     Campbell's deceptive statements also violate 21 C.F.R. § 101.14(d), which requires that all health claims be "complete, truthful, and not misleading." *See also* Cal. Health & Safety Code § 110670 (requiring compliance with federal health claim requirements). As described above, Campbell's "Heart Healthy" claims are misleading because the product contains artificial trans fat in quantities that detrimentally affect heart health. Further, the statements are not "complete" because they fail to disclose that Campbell adds artificial trans fat to Healthy Request Gumbo, a material fact the knowledge of which is necessary for consumers to evaluate the truth of the product's health claims, and to make an informed purchasing decision.

57.     Finally, Healthy Request Gumbo is adulterated because it contains partially hydrogenated oil, which is a "poisonous or deleterious substance which may render it injurious to health." *See* 21 U.S.C. §§ 342(a)(1), 453(g)(1), 601(m)(1); Cal. Health & Safety Code § 110545.

## PLAINTIFF'S PURCHASES, RELIANCE, AND INJURY

58.   Plaintiff purchased Healthy Request Gumbo approximately three times per month between approximately January and May of 2015, from either (a) the Ralph's grocery store located at 10525 Commons Drive, San Diego, California 92127, (b) the Vons stores located at 11986 Bernardo Plaza Drive, San Diego, California 92128 and 351 West Felicita Avenue, Escondido, California 92025; or (c) the Albertsons located at 1570 West Valley Parkway, Escondido, California 92029.

59.   In purchasing Healthy Request Gumbo, plaintiff relied on Campbell's claims that the product was a "Healthy Request," was "Heart Healthy," was "COOKED WITH CARE," was "AHA CERTIFIED" and therefore "Meets Criteria for Heart-Healthy Food," and was "Made with Lean Chicken Meat." Plaintiff relied on these claims both individually, and especially in the context presented on the label as a whole, including with vignettes of vegetables and whole grains, which reinforced Campbell's health and wellness messaging for Healthy Request Gumbo. These statements, and the overall message conveyed to plaintiff—that Healthy Request Gumbo is a healthy, and a heart-healthy product—were important factors in plaintiff's decision to purchase Healthy Request Gumbo.

60.   When purchasing Healthy Request Gumbo, plaintiff was seeking for himself and his family a healthy, and heart-healthy product that did not negatively affect blood cholesterol levels or the health of their cardiovascular systems, and a product made with healthy ingredients. However, Plaintiff consumed Healthy Request Gumbo after purchasing it, and thus his risk of CHD and other morbidity has increased as a result of consuming Healthy Request Gumbo.

61.   Because plaintiff expected Campbell's health and wellness claims to be true and honest when they are in fact false and misleading, he did not receive the benefit of his purchases. Instead of receiving a product that was healthy, and in particular heart-healthy, plaintiff received a product that increased his risk of coronary heart disease and other ailments.

62.    Plaintiff was further injured by Campbell's omission of information that would have been important to and affected his purchasing decision had the information been made known to him.

63.    Specifically, plaintiff was injured by Campbell's omission and failure to disclose that it paid for the AHA's certification, and that it was not an independent certification. The mark was intended to, and did convey to plaintiff that an unbiased third party had independently certified the healthfulness and heart-healthfulness of Healthy Request Gumbo. Plaintiff was unaware this mark was obtained only after Campbell paid for its placement. Plaintiff relied on this mark, which was a substantial factor in his purchasing decision. Had Campbell disclosed that "AHA CERTIFIED" emblem was a paid endorsement, plaintiff would not have perceived the certification as independent, and as a result, would not have so strongly believed the product was healthy, and healthier than other alternatives. Campbell's concealing that it paid for this the endorsement therefore misled plaintiff, who acted reasonably.

64.    Campbell's omission was material, plaintiff's reliance was reasonable, and other reasonable consumers would have been misled by Campbell's omission. According to the AHA, studies have shown that the AHA certification increases product sales by influencing consumers' perception that an "independent" group has certified the healthiness of products bearing the mark. The AHA explains that "Shoppers want clear, simple purchase guidance from a trusted source. The American Heart Association heart-check mark increases product sales because seeing the mark on a package assures shoppers they are making a smart choice."[32]

65.    Plaintiff was further injured by Campbell's deceptive omission of the presence and detrimental health effects of the artificial trans fat in Healthy Request Gumbo. Had Campbell made that information known to plaintiff, he would have acted differently.

---

[32] American Heart Association Food Certification Program, *Boosting product sales; Helping shoppers choose, Supporting your marketing strategy*, *available at* http://www.watermelon.org/assets/Retailers/AHAStandardsforRetailerInfo.pdf

66.    Healthy Request Gumbo cost more than similar products without misleading labeling, and would have cost less, for example demanded less in the marketplace, absent Campbell's false and misleading statements and material omissions. Thus, the product was worth less than what plaintiff paid for it.

67.    By labeling Healthy Request Gumbo with false and misleading health and wellness claims, Campbell artificially increased the demand and market for the product among consumers, and thereby Healthy Request Gumbo's market share. Plaintiff and the Class would not have purchased as much Healthy Request Gumbo absent Campbell's false and misleading statements.

68.    Plaintiff purchased the product instead of competing products based on the false statements, misrepresentations, and omissions described herein.

69.    Plaintiff, on one or more occasions, would not have purchased the product absent Campbell's misrepresentations and omissions.

70.    Plaintiff lost money as a result of Campbell's unlawful behavior.

## CLASS ACTION ALLEGATIONS

71.    While reserving the right to amend, modify, or otherwise revise the Class definition during class certification, pursuant to Federal Rule of Civil Procedure 23, plaintiff seeks to represent a Class of all persons in the California who, on or after April 25, 2012, purchased Healthy Request Gumbo for personal, family, or household use, and not for resale.

72.    The members of the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

73.    Questions of law and fact common to plaintiff and the class include:

a.    Whether Campbell communicated a health and wellness message through Healthy Request Gumbo's packaging;

b.    Whether that message was material, or likely to be material, to a reasonable consumer;

c.    Whether Healthy Request Gumbo's label is false or misleading in any

16

particular;

d.      Whether Campbell had a duty to disclose information to the Class concerning the presence of trans fat in Healthy Request Gumbo and its effect on consumers' health;

e.      Whether Campbell fraudulently omitted material information that it had a duty to disclose in advertising Healthy Request Gumbo as healthy;

f.      Whether Healthy Request Gumbo is misbranded within the meaning of the FDCA or Sherman Law;

g.      Whether Healthy Request Gumbo's label and advertising claims created express warranties;

h.      Whether Campbell made any implied warranties as to Healthy Request Gumbo;

i.      Whether Campbell breached any express or implied warranties;

j.      The proper amount of restitution;

k.      The proper amount of damages and punitive damages; and

l.      The proper amount of reasonable attorneys' fees.

74.      Plaintiff's claims are typical of Class Members' claims in that they are based on the same underlying facts, events, and circumstances relating to Campbell's conduct.

75.      Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and particularly in class action litigation involving the false advertisement of foods.

76.      Questions of law and fact predominate over questions that affect only individual Class Members.

77.      As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a) and 23(b)(3). In addition, class treatment of individual issues may be appropriate under Fed. R. Civ. P. 23(b)(4).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law (UCL),

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

78.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

79.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

80.     The acts, omissions, misrepresentations, practices, and non-disclosures of Campbell as alleged herein constitute business acts and practices.

#### Fraudulent

81.     A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.

82.     As set forth herein, Campbell's health and wellness claims relating to its Healthy Request Gumbo are likely to deceive reasonable consumers and the public in light of the product's artificial trans fat content.

83.     In addition, Campbell's deceptive omission of material information it was obligated to disclose, concerning both the presence and detrimental health effects of the artificial trans fat in Healthy Request Gumbo, and its payment for the AHA certification, are likely to deceive reasonable consumers, who would have acted differently if Campbell's had revealed such information.

#### Unlawful

84.     The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

•       The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

•       The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

•       The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and

- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq*.

**Unfair**

85.    Campbell's conduct with respect to the labeling, advertising, and sale of its Healthy Request Gumbo was and is unfair because Campbell's conduct was and is immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

86.    Campbell's conduct with respect to the labeling, advertising, and sale of Healthy Request Gumbo was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

87.    Campbell's conduct with respect to the labeling, advertising, and sale of Healthy Request Gumbo was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

88.    Campbell profited from its sales of the falsely, deceptively, and unlawfully advertised product to unwary consumers.

89.    Campbell's conduct caused and continues to cause substantial injury to plaintiff and the other Class Members, who have suffered injury in fact as a result of Campbell's unlawful conduct.

90.    Plaintiff, on behalf of himself and the Class seeks an Order for disgorgement and restitution of all monies from the sale of Healthy Request Gumbo that were unjustly acquired through acts of unlawful competition.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law (FAL),

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

91.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

92.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

93.   As alleged herein, the advertisements, labeling, policies, acts, practices, and omissions of Campbell relating to its Healthy Request Gumbo misled consumers acting reasonably as to the healthfulness of the product.

94.   Plaintiff suffered injury in fact as a result of Campbell's actions as set forth herein because plaintiff purchased Healthy Request Gumbo in reliance on Campbell's false and misleading health and wellness marketing claims.

95.   Campbell's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Campbell has advertised the product in a manner that is untrue and misleading, which Campbell knew or reasonably should have known, and omitted material information from its advertising.

96.   Campbell profited from its sales of the falsely and deceptively advertised Healthy Request Gumbo to unwary consumers.

97.   As a result, pursuant to Cal. Bus. & Prof. Code § 17535, plaintiff on behalf of himself and the Class seeks an Order for disgorgement and restitution of all monies from the sale of Healthy Request Gumbo that were unjustly acquired through acts of false advertising.

**THIRD CAUSE OF ACTION**

**Violations of the Consumer Legal Remedies Act,**

**Cal. Civ. Code §§ 1750 *et seq.***

98.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

99.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

100.   Campbell's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of its product for personal, family, or household purposes by plaintiff and other Class Members, and thereby violated and continue to violate at least the following sections of the CLRA:

  a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

  b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

  c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

  d.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

101.   Campbell profited from its sale of the falsely, deceptively and unlawfully advertised Healthy Request Gumbo product to unwary consumers. As a result, plaintiff and the Class have suffered harm.

102.   Campbell's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

103.   Pursuant to California Civil Code § 1782, on October 14, 2015, plaintiff sent written notice to Campbell of his claims, but Campbell has failed, after 30 days, to satisfy plaintiff's demand or to rectify the behavior. Accordingly, plaintiff, on behalf of himself and

21

1 the Class, seeks compensatory damages, punitive damages, and reasonable attorneys' fees
2 and costs.

3     104.   In compliance with Cal. Civ. Code § 1780(d), plaintiff's affidavit of venue is
4 filed concurrently herewith.

**FOURTH CAUSE OF ACTION**

**Breach of Express Warranties,**

**Cal. Com. Code § 2313(1)**

8     105.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint
9 as if set forth in full herein.

10     106.   Through the Healthy Request Gumbo product labels, Campbell made
11 affirmations of fact or promises, and made descriptions of goods, that formed part of the basis
12 of the bargain, in that plaintiff and the Class purchased the product in reasonable reliance on
13 those statements. Cal. Com. Code § 2313(1).

14     107.   These affirmations include "Healthy Request," "Heart Healthy," "COOKED
15 WITH CARE," "AHA CERTIFIED," "Meets Criteria for Heart-Healthy Food," and "Made
16 with Lean Chicken Meat."

17     108.   Campbell breached its express warranties by selling a product that is not healthy,
18 and not heart healthy, but which in fact detrimentally affects cholesterol levels increasing risk
19 of CHD, stroke, and other morbidity.

20     109.   That breach actually and proximately caused injury in the form of the lost
21 purchase price that plaintiff and Class members paid for Healthy Request Gumbo product.

22     110.   As a result, plaintiff seeks, on behalf of himself and other Class Members, actual
23 damages arising as a result of Campbell's breaches of express warranty.

**FIFTH CAUSE OF ACTION**

**Breach of Implied Warranty of Merchantability,**

**Cal. Com. Code § 2314**

27     111.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint
28 as if set forth in full herein.

22

112.   Campbell, through its acts and omissions set forth herein, in the sale, marketing and promotion of Healthy Request Gumbo, made representations to plaintiff and the Class that, among other things, the product is healthy. Plaintiff and the Class bought Healthy Request Gumbo manufactured, advertised, and sold by Campbell as described herein.

113.   Campbell is a merchant with respect to the goods of this kind which were sold to plaintiff and the Class, and there was, in the sale to plaintiff and other consumers, an implied warranty that those goods were merchantable.

114.   However, Campbell breached that implied warranty in that Healthy Request Gumbo product is not healthy, as set forth in detail herein.

115.   As an actual and proximate result of Campbell's conduct, plaintiff and the Class did not receive goods as impliedly warranted by Campbell to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

116.   Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the product's purchase price.

### PRAYER FOR RELIEF

117.   Wherefore, plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Campbell as to each and every cause of action, and the following remedies:

A.   An Order declaring this action to be a proper class action, appointing plaintiff as class representatives, and appointing undersigned counsel as class counsel;

B.   An Order requiring Campbell to bear the cost of class notice;

C.   An Order requiring Campbell to disgorge or return all monies, revenues, and profits obtained by any means of wrongful act or practice;

D.   An Order requiring Campbell to pay all actual and statutory damages permitted under the causes of action alleged herein, including punitive damages;

E.   An Order requiring Campbell to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising;

1    F.    An Order awarding costs, expenses, and reasonable attorneys' fees;

2    G.    Pre-and post-judgment interest; and

3    H.    An Order for any other and further relief the Court deems necessary, just,

4 or proper.

5                              **JURY DEMAND**

6    Plaintiff hereby demands a trial by jury on all issues so triable.

7

8  Dated: April 25, 2016              /s/ Jack Fitzgerald

9                                     **THE LAW OFFICE OF JACK FITZGERALD, PC**

10                                    JACK FITZGERALD
                                      *jack@jackfitzgeraldlaw.com*

11                                    TREVOR M. FLYNN
                                      *trevor@jackfitzgeraldlaw.com*

12                                    MELANIE PERSINGER

13                                    *melanie@jackfitzgeraldlaw.com*
                                      Hillcrest Professional Building

14                                    3636 Fourth Avenue, Suite 202

15                                    San Diego, California 92103
                                      Phone: (619) 692-3840

16                                    Fax: (619) 362-9555

17                                    **THE LAW OFFICE OF PAUL K. JOSEPH, PC**

18                                    PAUL K. JOSEPH
                                      *paul@pauljosephlaw.com*

19                                    4125 W. Point Loma Blvd. #206

20                                    San Diego, CA 92110
                                      Phone: (619) 767-0356

21                                    Fax: (619) 331-2943

22                                    ***Attorneys for Plaintiff and the Proposed Class***

23

24

25

26

27

28

                                      24