MAYER BROWN LLP
DALE J. GIALI (SBN 150382)
 dgiali@mayerbrown.com
ANDREA M. WEISS (SBN 252429)
 aweiss@mayerbrown.com
REBECCA B. JOHNS (SBN 293989)
 rjohns@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone:  (213) 229-9500
Facsimile:   (213) 625-0248

Attorneys for Defendant
Campbell Soup Company

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD BROWER and MELINDA FERGUSON, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>CAMPBELL SOUP COMPANY,<br><br>Defendant. | Case No. 3:16-CV-01005-BEN-JLB<br><br>**DEFENDANT CAMPBELL SOUP COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FED. R. CIV. P. 11 SANCTIONS AGAINST JACK FITZGERALD AND THE LAW OFFICE OF JACK FITZGERALD, PC**<br><br>[Fed. R. Civ. P. 11]<br><br>Date:     September 26, 2016<br>Time:     10:30 a.m.<br>Location: Courtroom 5A<br><br>Trial Date: None Set |

## I. INTRODUCTION

On July 19, 2016, attorney Jack Fitzgerald of The Law Office of Jack Fitzgerald, PC signed, and then filed in this Court, an amended consolidated complaint (Dkt. #16) against defendant Campbell Soup Company ("Campbell") challenging the label of *Campbell's® Chunky™ Healthy Request®* Grilled Chicken & Sausage Gumbo Soup product (the "product" or "Healthy Request Gumbo"), a label which Mr. Fitzgerald knew at the time he filed the complaint had been approved by the United States Department of Agriculture's ("USDA") Food Safety and Inspection Service ("FSIS").[1]  The alleged basis for the lawsuit is that the product is labeled as healthy but contains partially hydrogenated oil ("PHO"), an ingredient that Mr. Fitzgerald claims is unsafe in the food products that contain it.

Based on unambiguous federal law, however, Mr. Fitzgerald may not bring claims based on a label inspected and approved by the USDA because labeling challenges are expressly preempted.  For this reason, and as more fully detailed below, Mr. Fitzgerald violated his certification under Fed. R. Civ. P. 11 and the Court should sanction him and his firm, and, separately, order them to reimburse Campbell's fees associated with this motion.

## II. RELEVANT RECORD

### A. USDA's Pre-Market Approval Of Campbell's Labels

The USDA is responsible for regulating the labels of Campbell's food products that contain 2% or more of meat or poultry.  *See* 21 U.S.C. § 451, *et seq.*[2]  The USDA, pursuant to the Poultry Products Inspection Act ("PPIA") and the Federal Meat Inspection Act ("FMIA") and the work of USDA's FSIS, employs a pre-approval process for labels.  *See* 21 U.S.C. § 457; *accord* 21 U.S.C. § 607.

This premarket evaluation and pre-approval process ensures compliance with

---

[1] *See* Declaration of Kirstin M. Mazzeo ("Mazzeo Decl.") ¶ 4, Ex. A.

[2] http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf

1

the requirements set forth in the PPIA and FMIA and their labeling regulations, including, significantly, the content and design of labeling to ensure that it is truthful, accurate, and not misleading, and to ensure that the products do not violate the misbranding sections of the PPIA and FMIA. Particularly relevant here, the specific requirements under which a product is allowed to be called "healthy" are set forth in the applicable regulations. *See* 9 C.F.R. § 317.363; *accord* C.F.R. § 381.463.[3] For this product, the FSIS reviewers determined that all of these particular requirements are satisfied. *See, e.g.*, 9 C.F.R. § 381.115, *et seq.* Because



the product labels met the requirements, they may be sold in interstate commerce and they bear USDA's inspection mark as shown at left and below.



*See* Ex. A to the Mazzeo Decl. at 2. Once a label has been approved by USDA's FSIS and bears the inspection mark shown above, the labeling may not be challenged as false or deceptive under state law. The PPIA and FMIA include preemption provisions that bar any state-law requirements that are not

---

[3] Campbell meticulously complies with this regulation. FSIS's review and approval of the label demonstrates that—in addition to challenges to the label being preempted—USDA's review included the "healthy" statement and whether the product complied with the detailed "healthy" regulations. Healthy Request Gumbo does comply, FSIS approved the label, and the label bears the inspection mark. This same record shows that the claims in plaintiffs' complaint are baseless.

identical to the federal ones; those provisions also specifically forbid any state-law requirements that would require a producer to modify any meat or poultry label that has been pre-cleared by USDA/FSIS. *See* 21 U.S.C. § 467e; 21 U.S.C. § 678.

## III. ARGUMENT

### A. Fed. R. Civ. P. 11 Prohibits Attorneys From Filing A Legally Baseless Complaint

"Filing a complaint in federal court is no trifling undertaking." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). The rules governing an attorney's use of the awesome powers of the federal judicial system against others are both serious and straightforward. Federal Rule of Civil Procedure 11 provides, in relevant part:

> By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).[4] Rule 11 "imposes a duty on attorneys to certify by their signature that (1) they have read the pleading or the motions they file and (2) the pleading or motion is 'well grounded in fact,' has a colorable basis in law, and is not filed for an improper purpose." *Sec. Farms v. Int'l Bhd. Of Teamsters*, 124 F.3d 999, 1016 (9th Cir. 1997) (citing Fed. R. Civ. P. 11(b); Fed. R. Civ. P. 11(b). The Rule 11 certification is as to all of these and, therefore, is violated if *any* of the above are not met.

Rule 11's "central purpose" is to "deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Where the Rule 11 violation is premised on the filing of a complaint, the Court must consider: (1) whether the claim is objectively baseless, and (2) whether the attorney has conducted "a reasonable and competent inquiry." *Christian*, 286 F.3d at 1127 (citing *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)).

"A claim is legally baseless if it is legally unreasonable, while a claim is factually baseless if it lacks factual foundation." *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 2007 WL 6137003, *3 (C.D. Cal. Apr. 16, 2007) (citing *Estate of Blue v. County of Los Angeles,* 120 F.3d 982, 985 (9th Cir. 1997)). A pleading is frivolous if it fails to "state[] an arguable claim" and its claims are "legally unreasonable, or without legal foundation." *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir. 1988) (citing *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987)); *In re Grantham Bros.*, 922 F.2d 1438, 1442 (9th Cir. 1991) (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831(9th Cir. 1986)).

A frivolous or legally unreasonable pleading or motion violates Rule 11 regardless of whether it was filed in good faith. *See Smith v. Ricks*, 31 F.3d 1478,

---

[4] In addition, the Code of Conduct of the Southern District of California provides counsel shall not "[k]nowingly participate in litigation or any other proceeding that is without merit or is designed to harass or drain the financial resources of the opposing party." Local Rule 83.4(a)(2)(C).

1488 (9th Cir. 1994) ("Counsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head.") (internal quotation marks omitted); *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1542 (9th Cir. 1986).  By filing the complaint in this action, Mr. Fitzgerald has violated the standards set forth by Rule 11.

> **B.    Mr. Fitzgerald's Complaint Is Legally Baseless Because The Challenged Labels Have Been Pre-Approved By Federal Regulators And The Claims Are Expressly Preempted By Federal Law**

The complaint filed by Mr. Fitzgerald alleges claims under California consumer protection law against Campbell.  Compl. ¶¶ 80-119.  These claims are premised on a theory that the term "healthy," other phrases on the label, and images of such things as vegetables and grains that "bolsters its health and wellness claims" are misleading because the product contains PHOs.  But, the USDA/FSIS premarket-clearance approval process for labels expressly preempts any state-law "[m]arking, labeling, packaging, or ingredient requirements . . . in addition to, or different than, those made under" the PPIA or FMIA. 21 U.S.C. § 467e (PPIA); 21 U.S.C. § 678 (FMIA).  These express-preemption provisions bar plaintiffs' claims relating to Campbell products that bear the USDA inspection mark.

It is no surprise that challenges to statements on the label of a USDA/FSIS pre-approved product have been rejected as preempted on numerous occasions. *See, e.g., Pelayo v. Nestlé USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013) (state law claims challenging "natural" labeling statements on filled pasta products preempted by USDA regulations governing poultry); *Kuenzig v. Kraft*, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011) (state law claims challenging labeling of deli poultry product dismissed); *Meaunrit v. ConAgra*, 2010 WL 2867393 (N.D. Cal. July 20, 2010) (state law claims challenging chicken pot pie labeling dismissed); *Meaunrit v. The Pinnacle Foods*, 2010 WL 1838715 (N.D. Cal. May 5, 2010) (state law claims challenging Swanson and Hungry Man frozen food dismissed); *Barnes*

*v. Campbell Soup*, 2013 WL 5530017 (N.D. Cal. July 25, 2013) (state law claims challenging "natural" labeling statements on canned soup dismissed); *Trazo v. Nestlé USA, Inc.*, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) (claim challenging labeling statements on Lean Pockets and Hot Pockets frozen food products barred based on PPIA prior approval preemption); *Nat'l Broiler Council v. Voss*, 44 F.3d 740, 743-47 (9th Cir. 1994); *Kraft Foods N. Am., Inc. v. Rockland County*, 2003 WL 554796, at *6-7 (S.D.N.Y. Feb. 26, 2003).

The reason for dismissal of these cases and others like them is simple: state-law claims challenging labeling statements on a USDA/FSIS pre-approved product are necessarily attempting to impose—under state law—requirements that are different from federal law, and therefore, are preempted. Mr. Fitzgerald's attempt to challenge this straightforward principle is sanctionable. To "allow a jury to pass judgment on Defendant's labels, notwithstanding the USDA's approval, would disrupt the federal regulatory scheme." *Id.*[5] *Meaunrit v. The Pinnacle Foods Group, LLC*, 2010 WL 1838715, at *7.

Mr. Fitzgerald is well aware of this dispositive preemption. Among other things, on November 6, 2015, and in response to a letter sent by Mr. Fitzgerald regarding alleged violations of the Consumers Legal Remedies Act, the Magnuson Moss Warranty Act, and breaches of express and implied warranties, Campbell spelled all of this out for Mr. Fitzgerald in writing. *See* Ex. A to the Declaration of

---

[5] *Accord Kuenzig*, 2011 WL 4031141, at *7 (when labels pass USDA's "preapproval process," they "are presumptively lawful and not false or misleading," so "any state law claim based on the contention that the labels are false or misleading is preempted, because such a claim would require Plaintiff to show that the information stated on the labels should have been presented *differently*"); *Meaunrit v. ConAgra*, 2010 WL 2867393, at *7 ("[b]ecause the pre-approval process includes a determination of whether the labeling is false and misleading, and the gravamen of Plaintiff's attack on the label concerns whether those instructions are accurate, the plaintiff's state causes of action are preempted by federal law").

Kirstin M. Mazzeo ("Mazzeo Decl."), at 1. The letter detailed the authority for this claim, specified for Mr. Fitzgerald the USDA/FSIS approval process, and provided case law in support of the preemption argument. *Id.*

### C. A Large Sanction is Appropriate

The severity of the sanctions should take into account whether a filing is only frivolous or both frivolous and made for an improper purpose. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (1990). Where, as here, a complaint is found to have no legal basis, an improper purpose may be inferred. *Agbabiaka v. HSBC Bank USA Nat. Ass'n*, 2010 WL 1609974, *8 (N.D. Cal. 2010) (quoting *Paciulan v. George*, 38 F.Supp.2d 1128, 1144 (N.D. Cal. 1999)). As the Ninth Circuit has noted, "evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose." *Townsend*, 929 F.2d at 1362.

Filing a complaint without proper factual and legal investigation is sanctionable. *See Christian*, 286 F.3d at 1127 ("The attorney has a duty prior to filing a complaint not only to conduct a reasonable factual investigation, but also to perform *adequate legal research* that confirms whether the theoretical underpinnings of the complaint are 'warranted by existing law or a good faith argument for an extension, modification or reversal of existing law.'").

The inference of an improper purpose is further enhanced by the objective facts. Here, Mr. Fitzgerald sent a pre-litigation demand letter in accordance with the California Consumers Legal Remedies Act. Compl. ¶ 107. Even after counsel for Campbell informed him that his claims were without legal basis, *see* Mazzeo Decl., he proceeded to file a complaint on the same baseless legal theory on which Ms. Mazzeo instructed him. *See* Dkt. # 16.

"Rule 11 mandates sanctions when it is violated." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986). The provisions of Rule 11 "expressly authorize[] the imposition of monetary and/or nonmonetary sanctions . . . A monetary sanction may be composed of either or both a penalty

payable to the court, and/or an award of reasonable attorneys' fees to the opposing party for those 'fees and other expenses incurred as a direct result of the violation.'" *Truesdell v. S. California Permanente Med. Group*, 209 F.R.D. 169, 175 (C.D. Cal. 2002) (internal citations omitted).  The primary purpose of Rule 11 "is specific and general deterrence." *Refac Int'l, Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281, 287 (C.D. Cal. 1991) (internal citations omitted).  Thus, when a violation is found, the "sanction should be 'what is sufficient to deter repetition of such conduct or comparable conduct.'" *Truesdell*, 209 F.R.D. at 174 (internal citations omitted).

Campbell has spent more than $60,000 in defense fees in demonstrating the legal insufficiency of any claims based on labeling statements.  Declaration of Dale J. Giali ("Giali Decl."). at ¶ 2.  That is separate from the fees associated with this motion, which exceed $25,000.  Giali Decl. at ¶ 3.  These needless expenses were caused by counsel's violation of Rule 11.  As such, the Court should order that $60,000 be paid to the Court as a sanction against Mr. Fitzgerald and his law firm.

In addition, Campbell should be awarded $25,000, part of its fees spent in preparing this motion.  *See* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the [Rule 11] motion."); *Margolis v. Ryan*, 140 F.3d 850, 855 (9th Cir. 1998) ("district court did not err by including in the amount [of sanctions under Rule 11] the costs and fees borne by defendant-appellee in bringing the motion for sanctions").

Given counsel's egregious conduct, these sanctions are appropriate.[6]

---

[6] *Compare, Pan-Pac. & Low Ball Cable Television Co. v. Pac. Union Co.*, 987 F.2d 594, 597 (9th Cir. 1993) (where plaintiff failed to make reasonable factual and legal inquiry into bases of state law claims, claims were frivolous and court awarded $101,605.13 plus accumulated interest for attorney's fees); *Refac Int'l, Ltd. v. Hitachi Ltd.*, 141 F.R.D. at 287  (where plaintiff failed to make the minimum required factual inquiry before filing its complaint, the court held that the appropriate sanction was all of the expenses including attorney's fees of all defendants from the time of filing through the claims for sanctions; court awarded

*(Footnote continued on next page)*

## IV. CONCLUSION

For the foregoing reasons, Campbell requests the Court grant this motion, order Mr. Fitzgerald to pay $60,000 to the Court and $25,000 to Campbellas a reasonable off-set of the fees incurred in bringing this motion, and strike the complaint with prejudice.

Dated: August 5, 2016

MAYER BROWN LLP
DALE J. GIALI
ANDREA M. WEISS
REBECCA B. JOHNS

By: s/ *Dale J. Giali*
Dale J. Giali
Attorneys for Defendant
Campbell Soup Company

---

*(footnote continuation)*
$1,446,511.49); *Kunimoto v. Fidell*, 26 F. App'x 630, 631-32 (9th Cir. 2001) (where court found plaintiffs lacked standing to file the complaint, the court noted that where the original complaint is improper, all attorney's fees reasonably incurred defending against it form the proper basis for sanctions; the court noted that the award was large, but concluded it was justified considering the special master's detailed findings); *ADO Fin., AG v. McDonnell Douglas Corp.*, 938 F. Supp. 590, 593 (C.D. Cal. 1996) (where court found party and law firm had made material representations and half-truths to court, it awarded reasonable fees to opposing counsel for fees associated primarily with opposing appropriate motions, totaling $138,970.55 (law firm responsible for 25%, party responsible for 75%), as well as assessing a $10,000 sanction to the court).