**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd., No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD BROWER and MELINDA FERGUSON, on behalf of themselves, all others similarly situated, and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> CAMPBELL SOUP COMPANY, <br><br> Defendant. | Case No: 3:16-cv-01005-BEN-JLB <br><br> **PLAINTIFFS' OPPOSITION TO CAMPBELL SOUP COMPANY'S MOTION FOR RULE 11 SANCTIONS (DKT. NO. 18); AND NOTICE OF MOTION AND CROSS-MOTION FOR SANCTIONS** <br><br> Judge: Hon. Roger T. Benitez <br> Date: September 26, 2016 (motion) <br> Date: October 11, 2016 (cross-mot.) <br> Time: 10:30 a.m. <br> Location: Courtroom 5A |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

NOTICE OF CROSS-MOTION FOR SANCTIONS ............................................ 1

MEMORANDUM OF POINTS & AUTHORITIES .............................................. 2

I.     INTRODUCTION & RELEVANT FACTS ..................................... 2

II.    LEGAL STANDARD ................................................................ 5

       A.     Rule 11 .................................................................... 5

       B.     28 U.S.C. § 1927 ...................................................... 7

       C.     The Court's Inherent Power ......................................... 8

III.   ARGUMENT ......................................................................... 8

       A.     Campbell's Rule 11 Motion is Meritless and Should be Denied ............. 8

              1.     Plaintiffs' Claims are Warranted by Existing Law ......................... 8

              2.     Alternatively, Plaintiffs' Claims are Warranted by a
                     Nonfrivolous Argument for Extending the Holdings in
                     *Reid* and *Hofmann* .......................................... 9

              3.     Plaintiffs' Counsel Performed a Reasonable Inquiry
                     Before Filing the Lawsuit ............................................ 9

              4.     Because Plaintiffs' Lawsuit is Not Frivolous, it Cannot,
                     as a Matter of Law, Have Been Filed for an "Improper
                     Purpose" .......................................................... 10

       B.     As a Matter of Law, Campbell's Defective Service Also
              Precludes the Imposition of Sanctions Under Rule 11(c)(2) ................. 11

i

C.    The Court Should Sanction Campbell, Mr. Giali, and Ms. Mazzeo for Filing and Testifying in Support of Campbell's Improperly-Motivated and Frivolous Rule 11 Motion ...........................12

   1.    The Court Should Sanction Campbell ...........................................16

   2.    The Court Should Sanction Mr. Giali.............................................16

   3.    The Court Should Sanction Ms. Mazzeo.....................................17

D.    Plaintiffs Have Incurred $12,700 in Responding to Campbell's Rule 11 Motion ..........................................................................17

IV.   CONCLUSION ...............................................................................17

*Brower et al. v. Campbell Soup Company*, No. 16-cv-1005-BEN-JLB
PLAINTIFFS' OPPOSITION TO CAMPBELL'S MOTION FOR RULE 11 SANCTIONS
& CROSS-MOTION FOR SANCTIONS

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Backus v. Nestle USA, Inc.*,
   --- F. Supp. 3d ----, 2016 WL 879673 (N.D. Cal. Mar. 8, 2016)........................................2

*Barber v. Miller*,
   146 F.3d 707 (9th Cir. 1998) ........................................................................11

*Barley v. Fox Chase Cancer Ctr.*,
   54 F. Supp. 3d 396 (E.D. Pa. 2014) ..............................................................15

*Blixeth v. Yellowstone Mountain Club, LLC*,
   796 F.3d 1004 (9th Cir. 2015) .......................................................................7

*Boyer v. Cline*,
   1989 WL 18819 (D. Kan. Feb. 9, 1989) .......................................................10

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990)........................................................................................5

*Crawford v. Japan Airlines*,
   2013 WL 2420715 (D. Haw. May 31, 2013) ................................................16

*Creative Compounds, LLC v. Boldt*,
   2011 WL 5557376 (S.D. Cal. Nov. 15, 2011) ..............................................12

*Edberg v. Neogen Corp.*,
   17 F. Supp. 2d 104 (D. Conn. 1998)...............................................................7

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ......................................................................5, 8

*Gagne v. Zodiac Maritime Agencies, Ltd.*,
   274 F. Supp. 2d 1144 (S.D. Cal. 2003)............................................................5

*Gaiardo v. Ethyl Corp.*,
   835 F.2d 479 (3d Cir. 1987)..........................................................................16

*Brower et al. v. Campbell Soup Company*, No. 16-cv-1005-BEN-JLB
Plaintiffs' Opposition to Campbell's Motion for Rule 11 Sanctions
& Cross-Motion for Sanctions

*Golden Gate Way, LLC v. Stewart*,
   2011 WL 3667496 (N.D. Cal. Aug. 22, 2011) ...................................................................10

*Greenberg v. Salam*,
   822 F.2d 882 (9th Cir. 1987) ...................................................................10

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)...................................................................14

*Hofmann v. Fifth Generation, Inc.*,
   2015 WL 7430801 (S.D. Cal. Nov. 20, 2015) ...................................................................9

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005) ...................................................................12

*In re Cendant Corp. Derivative Action Litig.*,
   96 F. Supp. 2d 403 (D.N.J. 2000) ...................................................................9

*In re Keegan Mgmt. Co. Sec. Litig.*,
   78 F.3d 431 (9th Cir. 1996) ...................................................................5, 6

*In re Order to Show Cause*,
   741 F. Supp. 1379 (N.D. Cal. 1990) ...................................................................10

*In re Quinones*,
   543 B.R. 638 (N.D. Cal. 2015) ...................................................................11

*In re W. Coast Real Estate & Mortg. Inc.*,
   2013 WL 2250242 (9th Cir. Br. May 22, 2013)...................................................................14

*Jordan v. Multnomah County*,
   815 F.2d 1258 (9th Cir. 1987) ...................................................................13

*Kilopass Tech., Inc. v. Sidense Corp.*,
   82 F. Supp. 3d 1154 (N.D. Cal. 2015) ...................................................................13

*Langer v. Kacha*,
   2016 WL 4595129 (S.D. Cal. Sept. 2, 2016)...................................................................6, 8

*Larez v. Holcomb*,
    16 F.3d 1513 (9th Cir. 1994) .................................................................5

*McGuire Oil Co. v. Mapco, Inc.*,
    958 F.2d 1552 (11th Cir. 1992) ...........................................................6

*MetLife Bank, N.A. v. Badostain*,
    2010 WL 5559693 (D. Idaho Dec. 30, 2010) .....................................12, 14, 16

*Montrose Chem. v. Am. Motorists Ins. Co.*,
    117 F.3d 1128 (9th Cir. 1997) .............................................................5

*Murdeck v. Stoute*,
    54 F.2d 1437 (9th Cir. 1995) ...............................................................6

*Nakash v. U.S. Dep't of Justice*,
    708 F. Supp. 1354 (S.D.N.Y. 1998) ....................................................7

*Nat'l Fed'n of the Blind of Neb., Inc. v. Outlook Neb., Inc.*,
    2011 WL 4802643 (D. Neb. Oct. 11, 2011) .......................................7

*New Alaska Dev. Corp. v. Guetschow*,
    869 F.2d 1298 (9th Cir. 1989) .............................................................8

*Operating Eng'rs Pension Trust v. A-C Co.*,
    859 F.2d 1336 (9th Cir. 1988) .............................................................6

*Padres Hacia Una Vida Mejor v. Jackson*,
    2012 WL 6053946 (E.D. Cal. Dec. 5, 2012) .....................................6

*Partington v. Gedan*,
    880 F.2d 116 (9th Cir. 1989) .........................................................14, 15

*Patelco Credit Union v. Sahni*,
    262 F.3d 897 (9th Cir. 2001) ...............................................................1

*Peloza v. Capistrano Unified Sch. Dist.*,
    37 F.3d 517 (9th Cir. 1994) .................................................................6

*Potter v. Crosswhite*,
2010 WL 557365 (D. Or. Dec. 2, 2010) ...................................................11

*R.P. v. Prescott Unified Sch. Dist.*,
631 F.3d 1117 (9th Cir. 2011) ...................................................10

*Radcliffe v. Rainbow Constr. Co.*,
254 F.3d 772 (9th Cir. 2001) ...................................................12

*Reid v. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015) ...................................................8

*Safe-Strap Co., Inc. v. Koala Corp.*,
270 F. Supp. 2d 407 (S.D.N.Y. 2003) ...................................................16

*Sanchez v. Bank of Am.*,
2010 WL 2382347 (N.D. Cal. June 10, 2010)...................................................14

*Strom v. United States*,
641 F.3d 1051 (9th Cir. 2011) ...................................................6

*Truesdell v. S. Cal. Permanente Med. Group*,
293 F.3d 1146 (9th Cir. 2002) ...................................................5

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
982 F.2d 363 (9th Cir. 1992) ...................................................6

*United Nat'l Ins. Co. v. R & D Latex Corp.*,
242 F.3d 1102 (9th Cir. 2001) ...................................................6

*United States v. Mead Corp.*,
533 U.S. 218 (2001)...................................................8

*Weaver v. Chrysler Corp.*,
1998 WL 477725 (S.D.N.Y. Aug. 14, 1998)...................................................15

*Welch v. Met. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007) ...................................................14

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
   556 F.3d 815 (9th Cir. 2009) ........................................................................11

**Statutes**

21 U.S.C. § 467e ...............................................................................................8

28 U.S.C. § 1927 .......................................................................................passim

**Rules**

Fed. R. Civ. P. 11(c)(2) .............................................................................passim

Fed. R. Civ. P. 11(c)(4) ...................................................................................13

Fed. R. Civ. P. 5(b)(2)(B)(ii)...........................................................................11

S.D. Cal. Civ. L.R. 7.1.e.1 .................................................................................4

**Regulations**

21 C.F.R. § 101.75 .............................................................................................8

9 C.F.R. § 317.8 .................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 11, advisory committee notes to 1983 amendments .................6, 13

Fed. R. Civ. P. 11, advisory committee notes to 1993 amendments ...........passim

Georgene M. Vairo, Rule 11 Sanctions: Case Law Perspectives And Preventative
   Measures § 4.01[c][3][F] (2d ed. Supp. 1994)...................................................16

*Standard and Guidelines for Practice under Rule 11 of the Federal Rules of Civil
   Procedur*e (1988) ...............................................................................................6

1

## **NOTICE OF CROSS-MOTION FOR SANCTIONS**

2 TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

3   PLEASE TAKE NOTICE THAT, on October 11, 2016, at 10:30 a.m. or as soon
4 thereafter as may be heard, in Courtroom 5A of this Court, located at 221 West Broadway,
5 San Diego, California, before the Honorable Roger T. Benitez, plaintiffs will and hereby do
6 move the Court, pursuant to Fed. R. Civ. P. 11(c)(2),[1] 28 U.S.C. § 1927, and the Court's
7 inherent authority, for an Order jointly and severally sanctioning Campbell and its counsel,
8 Dale Giali, and his firm, Mayer Brown LLP, and Kirstin M. Mazzeo, Campbell's Litigation
9 Counsel, for filing and offering testimony in support of a frivolous Rule 11 motion for
10 sanctions, which was brought for improper purposes and thereby unreasonably and
11 vexatiously multiplied the litigation.

12   This Cross-Motion is based on this Notice of Motion, the below Memorandum of
13 Points & Authorities, plaintiffs' concurrently-filed Opposition to Campbell's Motion to
14 Dismiss and all supporting papers, the concurrently-filed Declaration of Jack Fitzgerald in
15 Opposition to Campbell's Rule 11 Motion for Sanctions and in Support of Plaintiffs' Cross-
16 Motion for Sanctions ("Fitzgerald Sancts. Decl."), all prior proceedings and pleadings on file,
17 and any further written or oral argument or evidence submitted in support of, or in opposition
18 to plaintiffs' cross-motion.

19
20
21
22
23

[1] "A party defending a Rule 11 motion need not comply with the separate document and safe
24 harbor provision when counter-requesting sanctions." *Patelco Credit Union v. Sahni*, 262
25 F.3d 897, 913 (9th Cir. 2001); *see also* Fed. R. Civ. P. 11, advisory committee notes to 1993
amendments ("service of a cross-motion under Rule 11 should rarely be needed since under
26 the revision the court may award to the person who prevails on a motion under Rule 11—
27 whether the movant or the target of the motion—reasonable expenses, including attorneys'
fees, incurred in presenting or opposing the motion.").

28

1

*Brower et al. v. Campbell Soup Company*, No. 16-cv-1005-BEN-JLB
PLAINTIFFS' OPPOSITION TO CAMPBELL'S MOTION FOR RULE 11 SANCTIONS
& CROSS-MOTION FOR SANCTIONS

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION & RELEVANT FACTS

Campbell's Rule 11 motion hinges on its assertion that plaintiffs' claims are preempted, but as set forth in plaintiffs' opposition to Campbell's motion to dismiss, Campbell is simply wrong. Plaintiffs' lawsuit is not just "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law," Fed. R. Civ. P. 11(b)(2), but plaintiffs' position that their claims are not preempted is *demanded* by *controlling* Ninth Circuit precedent in *Reid v. Johnson & Johnson*, which—despite it being the most important decision on preemption of food false advertising cases that the Ninth Circuit has issued in recent years—Campbell fails to mention even once in either its Rule 11 or 12 motions.

Not only are plaintiffs' claims against Campbell not preempted, but Campbell certainly knew so. Campbell's counsel, Mr. Giali, holds himself out as one of the country's foremost experts on class action litigation in the food and beverage industry, and particularly as to issues of preemption. (*See* Fitzgerald Sanct. Decl. Exs. 1-2.) He was deeply involved in at least one recent case that turned on the decision in *Reid*. *See Backus v. Nestle USA, Inc.*, --- F. Supp. 3d ----, 2016 WL 879673, at *5-7 (N.D. Cal. Mar. 8, 2016).[2] Mr. Giali thus knows *Reid* well. Yet, despite its clear application, Mr. Giali's Rule 11 and 12 briefs wholly ignore *Reid*.

For good reason. Whereas Campbell previously had *carte blanche* to deceive, so long as the FSIS's cursory "review" resulted in approval (*see* R. 11 Mot. at 5-6 (collecting cases); R. 12 Mot. at 7-9 (same)), following *Reid*, and especially following the Honorable Jeffery T. Miller's decision in *Hofmann v. Fifth Generation* interpreting and applying *Reid* in a manner that dispatches Campbell's preemption argument, Campbell saw the proverbial writing on

---

[2] Mr. Giali's firm biography even boasts that he "[s]ecured a ground-breaking victory" in *Backus*, with the court "rul[ing] that plaintiffs' 'use' theory . . . was expressly preempted." (Fitzgerald Sanct. Decl. Ex. 1 at 3.)

2

the wall.[3] In a desperate attempt to avoid a decision that would expose Campbell to state law claims for falsely advertising even USDA "approved" labels, and thereby drastically change its business model and expose Campbell to litigation where it has previously enjoyed virtual immunity for years, Campbell not only brought a Rule 11 motion against plaintiffs' counsel, Jack Fitzgerald—who incidentally briefed, argued, and secured the decision in *Reid*—and not only adopted a Rule 12 argument in support of preemption that itself is borderline frivolous given the holding in *Reid*, but Campbell also took extra, and extraordinary steps to ensure its Rule 11 motion had the maximum possible intimidating effect.

First—without any prior notice to plaintiff's counsel—on July 15, 2016, Campbell served a motion asserting that both that plaintiffs' entire case, and paragraph 58 specifically, were in violation of Rule 11. Although plaintiffs did not necessarily agree, they withdrew paragraph 58 to avoid unnecessary and wasteful expenditure of party and judicial resources because the allegation was peripheral to their claims. (*See* Dkt. No. 15.) This despite that "counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion," and that "Rule 11 motions should not be made or threatened for minor, inconsequential violations to the standards prescribed by subdivision (b)." Fed. R. Civ. P. 11, advisory committee notes to the 1993 amendments.

When plaintiffs withdrew paragraph 58 pursuant to Fed. R. Civ. P. 11(c)(2), Campbell represented that this "moot[ed]" its Rule 11 motion (Fitzgerald Sancts. Decl. Ex. 3 at 3); but to secure yet another two weeks to respond, Campbell pretended it did not know what the operative Complaint was, despite that plaintiff had attached a conformed copy to the notice of withdrawal (*see* Dkt. No. 15-1). (*See* Fitzgerald Sancts. Decl. ¶ 6 & Ex. 3.) Thus plaintiffs,

---

[3] Just as Mr. Giali was certainly aware of *Reid* and its application to plaintiffs' claims, it is inconceivable that Mr. Giali and his staff did not, in drafting their motions, locate *Hofmann*, a decision issued by a court in this district concerning whether an agency's label review and approval had preemptive effect. Yet, as with *Reid*, neither Campbell's Rule 11 or 12 motions mentions *Hofmann*.

3

1   "despite [their] position that no further amendment is even necessary . . . agreed [they] would

2   nevertheless file an amended complaint, prompting under Rule 15(a)(3) an additional 2 weeks

3   for Campbell's to respond" (*id.*).

4        Following that agreement, and likely because its Rule 11 motion had not intimidated

5   plaintiffs into dropping their case entirely, Campbell tried instead to buy plaintiffs' silence

6   on the issue of preemption, offering—despite its assertion to this Court that the case is entirely

7   baseless—a substantial individual settlement, which plaintiffs rejected. (Fitzgerald Sancts.

8   Decl. ¶ 7 & Ex. 3.)

9        Campbell filed its Rule 12 motion on August 5. (Dkt. No. 17.) Although it was entitled

10   to set the hearing date within 28 days, S.D. Cal. Civ. L.R. 7.1.e.1, Campbell instead set the

11   hearing 52 days out, for September 26. Only later did it become apparent why. Whereas under

12   the normal 28-day rule, plaintiffs' opposition would have been due 14 days later, before

13   Campbell could satisfy Rule 11's safe harbor provision—meaning the Court would have

14   plaintiffs' opposition, and, due to the strength of plaintiffs' arguments which Campbell likely

15   already anticipated, this would mean the filing of any Rule 11 motion *following* plaintiffs'

16   opposition would be patently frivolous.

17        But Campbell wanted to file its Rule 11 motion, and it wanted this Court to see and be

18   influenced by the motion before plaintiffs even had a chance to respond to the Rule 12 motion,

19   as this would maximize its intimidating effect: if Rule 11 prevented Campbell from filing its

20   Rule 11 sanctions motion, Campbell could not attempt to strong-arm plaintiffs into

21   submission. So Campbell set the hearing way out to give itself an extra three weeks to prepare,

22   attempt to serve, and file a second Rule 11 motion, all before plaintiffs' opposition to its Rule

23   12 motion was due.

24        After plaintiffs rejected Campbell's settlement offer, contrary to its representation that

25   its Rule 11 motion was moot, and following the filing of its Rule 12 motion, Campbell

26   purported to serve on August 29 its second Rule 11 sanctions motion. To this end, Campbell's

27

28

process server "attempted service at 3:54 p.m[.], during normal business hours, but the office was closed, so [she] slid the documents under the door." (Dkt. No. 18-6 at 2.)

Because Campbell had not even bothered before filing the Rule 11 motion to review and understand plaintiffs' position to determine whether the Rule 11 motion was actually justified, on August 30 plaintiffs' counsel asked if Campbell would stipulate "for obvious reasons [] to continue the hearing on [] its Rule 11 motion until after the Rule 12 motion is decided?" (Fitzgerald Decl. Ex. 4.) Mr. Giali said he would "try to expedite a response" (*see id.*), but never gave one (*id.* ¶ 8).

## II.   LEGAL STANDARD

"Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writing filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

### A.   Rule 11

For a pleading to violate Rule 11, it must be "legally frivolous and factually misleading." *Gagne v. Zodiac Maritime Agencies, Ltd.*, 274 F. Supp. 2d 1144, 1151 n.3 (S.D. Cal. 2003) (citing *Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d 1146, 1153 (9th Cir. 2002)). "To be frivolous, a filing must be baseless and have been made without reasonable and competent inquiry." *Id.* (citing *Montrose Chem. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1133 (9th Cir. 1997)); *see also In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) ("The word 'frivolous' . . . is shorthand that this court has used to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry.").

When brought in response to a complaint, a Rule 11 motion poses a particularly dangerous threat of 'chill[ing] vigorous advocacy.'" *See Larez v. Holcomb*, 16 F.3d 1513, 1522 (9th Cir. 1994) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). Therefore, "[a]s long as there is some 'plausible basis,' even a weak one, for the arguments

advanced, then Rule 11 sanctions are improper." *Padres Hacia Una Vida Mejor v. Jackson*, 2012 WL 6053946, at *1 (E.D. Cal. Dec. 5, 2012) (citing *United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001); *Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011)). This is because Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed. R. Civ. P. 11, advisory committee notes to 1983 amendments. And, "Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously." *Langer v. Kacha*, 2016 WL 4595129, at *1 (S.D. Cal. Sept. 2, 2016) (quoting *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) (Rule 11 sanctions are "reserve[d] . . . for the rare and exceptional case where the action is clearly frivolous, legally unreasonably or without legal foundation, or brought for an improper purpose.")).

The "plausible basis" standard is satisfied, *inter alia*, by presenting "sufficient case law to support a reasonable belief" that the accused behavior is not frivolous. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 370 (9th Cir. 1992). Likewise, unclear precedent or complex law can make sanctioning the filing of a Complaint inappropriate. *See Murdeck v. Stoute*, 54 F.2d 1437, 1444 (9th Cir. 1995) (no Rule 11 violation for bringing claim where law was unclear); *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 524 (9th Cir. 1994) (complaint was not frivolous where it raised questions of first impression); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1564 (11th Cir. 1992) (affirming denial of sanctions where "case present[ed] issues of real complexity").

But even if a Complaint is not "well-founded," "[a]n attorney may not be sanctioned . . . so long as she conducted a reasonable inquiry." *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d at 434. Whether an inquiry is reasonable depends on all relevant circumstances, including counsel's knowledge of the applicable law. *See Standard and Guidelines for Practice under Rule 11 of the Federal Rules of Civil Procedur*e (1988), reprinted in 121 F.R.D. 101, 114 (1988)). Where counsel appears to have accurate knowledge of the law, in-depth investigation may not be necessary. *See Nat'l Fed'n of the Blind of Neb., Inc. v. Outlook*

*Neb., Inc.*, 2011 WL 4802643, at *12 (D. Neb. Oct. 11, 2011) ("the court cannot say that it was unreasonable for counsel to make the filing based on his knowledge of the law at the time—which appears to have been accurate").

"[A]n attorney who contemplates filing a Rule 11 motion must consider the very liberal standards that will govern the court's review," and "examine the target document under these very forgiving standards." *Nakash v. U.S. Dep't of Justice*, 708 F. Supp. 1354, 1368 (S.D.N.Y. 1998). Moreover, Rule 11 motions:

> should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine.

Fed. R. Civ. P. 11, advisory committee notes to 1993 amendments; *see also Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 109 (D. Conn. 1998) ("Rule 11 should never be used as a litigation tactic for intimidating opposing counsel from asserting a meritorious position.").

Finally, "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11, advisory committee notes to 1993 amendments.

### B.    28 U.S.C. § 1927

Under 28 U.S.C. § 1927, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under § 1927 "must be supported by a finding of subjective bad faith," *Blixeth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (quotation omitted), which "is present when an attorney knowingly or recklessly raises a frivolous argument or argues a

7

*Brower et al. v. Campbell Soup Company*, No. 16-cv-1005-BEN-JLB
PLAINTIFFS' OPPOSITION TO CAMPBELL'S MOTION FOR RULE 11 SANCTIONS
& CROSS-MOTION FOR SANCTIONS

meritorious claim for the purpose of harassing an opponent," *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).

## C.     The Court's Inherent Power

Pursuant to the Court's inherent power, it may "assess attorney's fees as a sanction 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . or has taken actions in the litigation for an improper purpose.'" *Langer*, 2016 WL 4595129, at *1 (quoting *Fink*, 239 F.3d at 991).

## III.    ARGUMENT

### A.     Campbell's Rule 11 Motion is Meritless and Should be Denied

#### 1.     Plaintiffs' Claims are Warranted by Existing Law

As set forth in plaintiffs' Rule 12 opposition, under the Ninth Circuit's controlling decision in *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015), agency actions insufficiently formal to warrant *Chevron* deference do not create federal "law" with preemptive effect. This includes "rulings . . . being churned out at a rate of 10,000" or more "a year," *see United States v. Mead Corp.*, 533 U.S. 218, 233 (2001)—like each of USDA's estimated 26,000 yearly label approvals.

In addition, the very statute that Campbell contends expressly preempts plaintiffs' claims, 21 U.S.C. § 467e, actually provides that "any State . . . may, consistent with the requirements under this chapter ***exercise concurrent jurisdiction*** with the Secretary over articles required to be inspected under this chapter for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded," *id.* (emphasis added), including because the labeling is "false or misleading," 9 C.F.R. § 317.8. (*See generally* Pls. Opp. to R. 12 Mot. at 16-17.)

Finally, plaintiffs' challenges to Campbell's use of "healthy" are not preempted because Campbell uses the word as a health claim given its proximity to the health claim prescribed by *FDA* regulations, *i.e.*, 21 C.F.R. § 101.75, and no applicable USDA regulation permits that use. Instead, the regulations only provide that such use requires FSIS manual,

8

rather than generic, review. Campbell's preemption argument relies on its demonstrably false claim that it uses "healthy" only as a nutrient content claim. (*Compare* R. 12 Mot. at 9-12, *with* Pl. Opp. to R. 12 Mot. at 14-16.)

### 2. Alternatively, Plaintiffs' Claims are Warranted by a Nonfrivolous Argument for Extending the Holdings in *Reid* and *Hofmann*

To the extent *Reid* and *Hofmann* are not directly on point, the legal principles espoused therein are nevertheless highly relevant to—indeed, dispositive of—the viability of plaintiffs' claims here, and Campbell's argument that they are preempted by USDA's label review. Just like the FDA "enforcement guideline" letter that had no preemptive effect in *Reid*, and the TTB label approval that had no preemptive effect in *Hofmann*, as discussed in plaintiffs' opposition to Campbell's motion to dismiss, USDA's label review is in no way "akin to notice and comment rulemaking or an adjudicative enforcement action." *Hofmann v. Fifth Generation, Inc.*, 2015 WL 7430801, at *6 (S.D. Cal. Nov. 20, 2015) (citation omitted). Rule 11's advisory committee notes make clear that:

> Arguments for extensions, modifications, or reversals of existing law or for creation of new law do not violate subdivision (b)(2) provided they are "nonfrivolous." This establishes an objective standard, intended to eliminate any "empty-head pure-heart" justification for patently frivolous arguments. However, the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated.

Fed. R. Civ. P., advisory committee notes to 1993 amendments; *see also In re Cendant Corp. Derivative Action Litig.*, 96 F. Supp. 2d 403, 405-406 (D.N.J. 2000) ("Courts, therefore, have denied sanctions where the law and facts, even if not adopted by the court, are ambiguous and could be reasonably interpreted in more than one way." (citation omitted))

### 3. Plaintiffs' Counsel Performed a Reasonable Inquiry Before Filing the Lawsuit

Plaintiffs' counsel have significant experience in the area of preemption of food

9

1   labeling false advertising claims. They did not bring this lawsuit willy-nilly. Rather, counsel

2   first sent a CLRA demand letter in October 2015. Counsel received, reviewed, and carefully

3   analyzed Campbell's November 6, 2015 response, which pre-dated the *Hofmann* decision.

4   Counsel performed further research over the next several months, and only when counsel was

5   quite certain *Reid* and *Hofmann* meant plaintiffs' claims were not preempted, did counsel

6   proceed to file this lawsuit in April 2016—five months after receiving Campbell's letter.

7   (Fitzgerald Decl. ¶¶ 9-10.) Especially in light of counsels' significant experience in consumer

8   protection, false advertising, food and beverage, preemption, and trans fat litigation (*see id.* ¶

9   9), this investigation was reasonable. *See Boyer v. Cline*, 1989 WL 18819, at *1 (D. Kan. Feb.

10  9, 1989) ("A signer's failure to make a reasonable factual inquiry must be a flagrant one before

11  sanctions are warranted." (citation omitted)); *accord In re Order to Show Cause*, 741 F. Supp.

12  1379, 1383 (N.D. Cal. 1990) ("counsel may not be sanctioned for conduct that is merely

13  negligent, mistaken, inadvertent, or an error in judgment").

### 4.   Because Plaintiffs' Lawsuit is Not Frivolous, it Cannot, as a Matter of Law, Have Been Filed for an "Improper Purpose"

16  "As a matter of law, a non-frivolous claim is never filed for an improper purpose." *R.P.*

17  *v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1126 (9th Cir. 2011) (quotation omitted).

18  "'Where a *complaint* is in question, the improper purpose analysis is not necessary because a

19  non-frivolous complaint cannot be said to be filed for an improper purpose,' and the district

20  court need not look beyond the 'frivolous filing' standard." *Golden Gate Way, LLC v.*

21  *Stewart*, 2011 WL 3667496, at *2 (N.D. Cal. Aug. 22, 2011) (emphasis in original) (quoting

22  *Greenberg v. Salam*, 822 F.2d 882, 885-86 (9th Cir. 1987)).

23  Because plaintiffs' claims are not frivolous and were competently investigated,

24  Campbell cannot obtain sanctions based on any purported "improper purpose," which in any

25  event is nonexistent; indeed, Campbell's only argument is that the frivolousness of the

26  Complaint demonstrates improper purpose (*see* R. 11 Mot. at 7 (arguing the Court should

27  "infer[]" an improper purpose supposedly because the Complaint "ha[s] no legal basis")).

28

10

### B.   As a Matter of Law, Campbell's Defective Service Also Precludes the Imposition of Sanctions Under Rule 11(c)(2)

Rule 11 requires that "[t]he motion [ ] be served under Rule 5," and "not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service," Fed. R. Civ. P. 11(c)(2). "[O]nly formal service of the motion that the moving party intends to file with the court in the event the putatively sanctionable filing is not withdrawn may trigger the beginning of the 21 day period," *Potter v. Crosswhite*, 2010 WL 557365, at *8 (D. Or. Dec. 2, 2010) (citing *Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998)). Because "[a]n award of sanctions for violation of . . . Rule 11[] is an exceptionally serious matter . . . . [i]t is therefore critical that a party seeking such extraordinary relief comply strictly with all the procedural requirements," *In re Quinones*, 543 B.R. 638, 646 (N.D. Cal. 2015) (citations omitted).

As evidenced by Campbell's own purported proof of service, Campbell *never* properly served its Rule 11 motion on Mr. Fitzgerald, who is the target of the motion; thus, when Campbell filed the motion on August 29, it violated Rule 11's "safe harbor" provision, requiring that the motion be denied as a matter of law.

Campbell's process server admits she merely "attempted service at 3:54 p.m[.], during normal business hours, but the office was closed, so [she] slid the documents under the door." (Dkt. No. 18-6 at 2.) This is not effective service under Rule 5, since "if the person has no office *or the office is closed*," then service must be made "at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 5(b)(2)(B)(ii) (emphasis added).

Campbell's attempted service was ineffective. Campbell has not otherwise served pursuant to Rule 5 its Rule 11 motion, but still filed its motion on August 29, despite that the Rule's safe-harbor provision was never triggered. Accordingly, Campbell's motion must be denied as a matter of law, regardless of its merits. *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 825 (9th Cir. 2009) ("Failure to provide the required notice precludes an

11

award of Rule 11 sanctions"); *Creative Compounds, LLC v. Boldt*, 2011 WL 5557376, at \*1 (S.D. Cal. Nov. 15, 2011) ("The [ ] Ninth Circuit enforces the safe harbor provision 'strictly,' and 'must reverse the award of sanctions when the challenging party [fails] to comply with the safe harbor provisions, even when the underlying filing is frivolous.'" (citing *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005); *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001))); *accord MetLife Bank, N.A. v. Badostain*, 2010 WL 5559693, at \*4-6 (D. Idaho Dec. 30, 2010) (denying Rule 11 sanctions motion where "safe harbor provision was never triggered because the motion served by the Defendant was procedurally deficient").[4]

## C.  The Court Should Sanction Campbell, Mr. Giali, and Ms. Mazzeo for Filing and Testifying in Support of Campbell's Improperly-Motivated and Frivolous Rule 11 Motion

Campbell's Rule 11 sanctions motion is frivolous for the reasons described above and in plaintiffs' opposition to its motion to dismiss. In addition, the following circumstances demonstrate the motion was brought for the improper purpose of intimidating plaintiffs' counsel to drop meritorious claims, and to avoid a decision unfavorable to its business:

(1)    Campbell served its initial Rule 11 motion without any warning, in violation of the advisory committee notes' admonition that "counsel should be expected to give informal notice to the other party . . . before proceeding to prepare and serve a Rule 11 motion," Fed. R. Civ. P. 11, advisory committee notes to 1993 amendments;

(2)    Despite representing to this Court that it believes the lawsuit is wholly baseless, Campbell made a substantial individual settlement offer to plaintiffs;

(3)    When plaintiffs did not accept Campbell's settlement offer, Campbell served a second Rule 11 motion, despite previously representing it was "moot[]";

---

[4] The *MetLife* court nevertheless "proceed[ed] to the analysis of the substantive merits of Defendants' motion for sanctions" because "the Court also finds MetLife is entitled to fees incurred in opposing Defendants' motion," *id.* at \*6.

12

(4)    Campbell did not wait to see what arguments plaintiffs would advance in opposition to its argument that their claims were preempted, strategically setting the hearing date on its Rule 12 motion so that it could file its Rule 11 motion with the same hearing date, before plaintiffs' opposition was due;[5]

(5)    Both Campbell's Rule 11 and Rule 12 motions fail to address either *Reid* or *Hofmann*, despite their clear application, despite that Mr. Giali holds himself out as an expert in this area, and despite that Mr. Giali is well-aware of the *Reid* decision from his involvement in *Backus*, and almost certainly aware of the decision in *Hofmann*;

(6)    Campbell requested $60,000 in sanctions payable to the Court, representing *its own supposed* expenses, but made no attempt to show why this amount is reasonable or justified in light of Rule 11's requirement that sanctions "must be limited to what suffices to deter repetition of conduct," Fed. R. Civ. P. 11(c)(4);

(7)    Separately, Campbell requests $25,000 supposedly representing the fees it incurred in drafting its Rule 11 motion (even though the Rule 11 and Rule 12 motion on which it apparently spent $60,000 are largely the same content), all without providing any support for the claimed fees, other than Mr. Giali's own conclusory declaration, which fails to identify timekeepers, billing rates, hours, tasks, or otherwise to demonstrate that the claimed fees are reasonable;[6] and

---

[5] This despite that "it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation," Fed. R. Civ. P., advisory committee notes to 1983 amendments. It will be telling whether Campbell chooses to withdraw its Rule 11 motion following its review of plaintiff's Rule 11 and 12 oppositions; but even if it does, the vexatious multiplication of litigation has already occurred.

[6] *Compare Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987) ("The fee applicant has the burden of producing satisfactory evidence, *in addition to the affidavits of its counsel*, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." (emphasis added)); *see also Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1169 (N.D. Cal. 2015) ("The party seeking fees bears the initial burden of establishing the hours expended litigating the

13

(8)     The relief Campbell requests, in part, is that the Court "strike the complaint with prejudice" (R. 11 Mot. at 9), relief that is both unavailable under Rule 11, and expressly in violation of the Advisory Committee's admonitions.[7]

The filing of a frivolous sanctions motion like Campbell's is a sanctionable event, and the Court can issue sanctions under Rule 11(c)(2), 28 U.S.C. § 1927, or its inherent authority. For example, in *Partington v. Gedan*, 880 F.2d 116 (9th Cir. 1989),[8] then Chief Judge Reinhardt, concurring in part and dissenting in part, noted that "unwarranted sanctions motions serve to multiply proceedings unnecessarily and to harass one's opponent," and stated that because he "believe[s] that Chang and Gedan's filing of a motion for sanctions

---

case and must provide detailed time records documenting the tasks completed and the amount of time spent." (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007))); *c.f. In re W. Coast Real Estate & Mortg. Inc.*, 2013 WL 2250242, at *12 (9th Cir. Br. May 22, 2013) ("The mandate that courts show their work is all the more important in cases where, as here, some of the entries have been redacted . . . ."); *Sanchez v. Bank of Am.*, 2010 WL 2382347, at *4-5 (N.D. Cal. June 10, 2010) (where fees were warranted under § 1927, awarding $9,180, in comparison to $27,459 request, because defendant "has not provided the Court with actual billing records from this action" and "[w]hile [defendant's] claimed rates are reasonable, the amount of time [defendant] claims to have spent working on this case is not").

[7] *See Metlife*, 2010 WL 5559693, at *10 (

> Defendants' motions for sanctions seemingly violates many, if not all, of the Advisory Committee's admonitions on the improper uses for a motion filed under Rule 11: the motion undeniably argues the theory of Defendants' case; and *it could easily be seen as a device to test the legal sufficiency or efficacy of allegations in the pleadings because the very relief it seeks is to strike claims made in the complaint* against the various defendants. (emphasis added)).

[8] Cert. granted, judgment vacated, 497 U.S. 1020 (1990), and opinion adopted, 914 F.2d 1349 (9th Cir. 1990), rev'd *en banc*, 923 F.2d 686 (9th Cir. 1991) (vacating opinion as it relates to Rule 11, finding Rule 11 only applies to district court proceedings).

14

against Partington for bringing this appeal was unreasonable and vexatious, I would impose sanctions pursuant to 28 U.S.C. § 1927." *Id.* at 149.

More recently, in *Barley v. Fox Chase Cancer Ctr.*, 54 F. Supp. 3d 396 (E.D. Pa. 2014), the court levied sanctions in closely analogous circumstances. There, the defendant filed two Rule 11 sanctions motions against plaintiff's counsel, which the court found meritless, also noting that defendant "submitted a totally redacted billing record to the Court," so that "[e]ven if we found a basis for sanctions, we would have found no basis for their imposition in this latest take-it-on-faith filing." *Id.* at 408. In granting the plaintiff's cross-motion for sanctions pursuant to § 1927, the court held:

> Littler Mendelson's two motions on Fox Chase's behalf without question offend Section 1927. It multiplied the proceedings by filing two motions for sanctions that were *unsupported by billing records* . . . . Fox Chase's counsel was unreasonable to file these motions as *they fly in the face of well-established Circuit law and could only have been intended to harass the plaintiff.* The motions increased the cost of proceedings by obliging Barley's counsel to respond. And Fox Chase's counsel should have known that the claims they advanced were meritless, being unsupported by evidence in the record . . . . Because the motions were so deficient, we find that they were filed for the improper purpose of harassing the opponent by burdening her with a needless defense.

*Id.* at 408 (emphasis added); *see also Weaver v. Chrysler Corp.*, 1998 WL 477725, at *2 (S.D.N.Y. Aug. 14, 1998)[9] (motion for sanctions unreasonably and vexatiously multiplied proceedings and warranted imposition of sanctions under § 1927).

In addition, Rule 11 provides that, "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorneys' fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). "[W]here a party's motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose, a court may find itself in the position of imposing Rule 11 sanctions on the moving party and/or her attorney." *Safe-Strap Co., Inc. v.*

---

[9] Vacated, 14 F. App'x 136 (2d Cir. 2001), order rescinded, 99 F. App'x 330 (2d Cir. 2004), and aff'd, 99 F. App'x 330 (2d Cir. 2004).

*Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) (quoting Georgene M. Vairo, Rule 11 Sanctions: Case Law Perspectives And Preventative Measures § 4.01[c][3][F] (2d ed. Supp. 1994)).

In *MetLife*, the court quoted the Third Circuit Court of Appeals noting "[t]he growing tendency to extend the Rule beyond its text and intent," and the "noticeable increase in unjustified requests for sanctions," instructing that "[t]he Rule is being perverted when used as a tool for harassment rather than as an instrument to prevent abuse." 2010 WL 5559693, at *9 (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987)). Finding the defendants' attempted use of Rule 11 improper, the *Metlife* court found "that an award of reasonable expenses, including attorney fees, incurred in responding to the sanctions motion [was] warranted under Rule 11(c)(2)." *Id.*, at *10.

### 1.   The Court Should Sanction Campbell

The Court should sanction Campbell pursuant to Fed. R. Civ. P. 11(c)(2), and its inherent power.[10] *See, e.g., Crawford v. Japan Airlines*, 2013 WL 2420715, at *9 (D. Haw. May 31, 2013) (Awarding targets of Rule 11 motion their fees where the movant "failed to comply with the procedural requirements of Rule 11 and . . . the [ ] Motion is substantively without merit.").

### 2.   The Court Should Sanction Mr. Giali

Mr. Giali signed Campbell's Rule 11 motion and further provided testimony in support of the motion. "The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court," Fed. R. Civ. P. 11, advisory committee notes to 1993 amendments. As the architect of Campbell's unjustified and unseemly Rule 11 motion—and especially because, given his expertise, Mr. Giali should have known better—Mr. Giali is subject to sanctions.

---

[10] Because Campbell is not an "attorney or other person admitted to conduct cases in any court of the United States," plaintiffs recognize that § 1927 does not provide for sanctions against Campbell directly.

### 3.    The Court Should Sanction Ms. Mazzeo

Ms. Mazzeo is an attorney, and Campbell's Litigation Counsel. (*See* Dkt. No. 18-3, Mazzeo Decl. ¶ 1.) She signed a declaration providing testimony supporting her client's Rule 11 sanctions motion. (*Id.*) Thus, she is subject to sanctions not only under Rule 11 and the Court's inherent power, but also under 28 U.S.C. § 1927, because she is "[a]n attorney . . . admitted to conduct cases in any court of the United States" (*see* Fitzgerald Decl. Ex. 5 (Mazzeo Pennsylvania Bar record)), and assisted her client and Mr. Giali in unreasonably and vexatiously multiplying the litigation.

### D.    Plaintiffs Have Incurred $12,700 in Responding to Campbell's Rule 11 Motion

Plaintiff would not have incurred attorneys' fees responding to Campbell's frivolous motion if Campbell had not filed it, or waited to see plaintiffs' opposition to the motion. Campbell's motion thus multiplied the litigation. As a result, plaintiff incurred $12,700 in excess fees. (Fitzgerald Sancts. Decl. ¶¶ 12-26).

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs and their counsel respectfully request that the Court deny Campbell's Rule 11 motion for sanctions, and sanction Campbell and its counsel, Dale Giali and Kirstin Mazzeo, in the amount of $12,700, payable to plaintiffs' to compensate them for their reasonable fees incurred as a result of Campbell's meritless Rule 11 motion.

Dated: September 12, 2016          /s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202

17

San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. #206
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

***Attorneys for Plaintiffs and the Proposed Class***

*Brower et al. v. Campbell Soup Company*, No. 16-cv-1005-BEN-JLB
PLAINTIFFS' OPPOSITION TO CAMPBELL'S MOTION FOR RULE 11 SANCTIONS
& CROSS-MOTION FOR SANCTIONS