UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD BROWER and MELINDA FERGUSON, on behalf of themselves, all others similarly situated, and the general public,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>CAMPBELL SOUP COMPANY,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 3:16-cv-01005-BEN-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO DISMISS (ECF No. 17);**<br><br>**(2) DENYING MOTION FOR SANCTIONS (ECF No. 18);**<br><br>**(3) DENYING CROSS-MOTION FOR SANCTIONS (ECF No. 20)** |

　　　Plaintiffs Harold Brower and Melinda Ferguson (collectively, "Plaintiffs") allege that Defendant Campbell Soup Company's ("Defendant" or "Campbell Soup") Chunky Healthy Request Grilled Chicken & Sausage Gumbo is falsely and misleadingly labeled and advertised as healthy when, in fact, it contains artificial trans fat, a substance harmful to human health.  (Am. Compl., ECF No. 16).  Now before the Court are three motions: (1) Defendant Campbell Soup's Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 17); (2) Campbell Soup's Motion for Sanctions under

Federal Rule of Civil Procedure 11 against Jack Fitzgerald and the Law Office of Jack Fitzgerald, PC (ECF No. 18); and (3) Plaintiffs' Cross-Motion for Rule 11 Sanctions against Campbell Soup, Dale Giali, and Kirstin Mazzeo (ECF No. 20).  Campbell Soup's primary argument in its motion to dismiss is that Plaintiffs' claims are preempted by federal law.  The Rule 11 motions arise from Defendant's contention that Plaintiffs' claims are preempted.

For the reasons discussed below, the Court **GRANTS** the motion to dismiss because Plaintiffs' claims are expressly preempted by federal law.  The Court **DENIES** both motions for Rule 11 sanctions.

I.  **FACTUAL BACKGROUND**[1]

Campbell Soup manufactures, markets, and sells to consumers Healthy Request Chunky Grilled Chicken & Sausage Gumbo soup (the "Product" or "Healthy Request Gumbo").  (Am. Compl. ¶ 1).  The Product contains an artificial trans fat in the form of partially hydrogenated soybean oil.  (*Id.*)

The consumption of artificial trans fat substantially harms health, and scientific studies demonstrate that there is no threshold intake level of artificial trans fat that does not increase the risk of heart disease.  (*Id.* ¶¶ 2, 14-34).  Artificial trans fat consumption is also linked to increased risk of diabetes, cancer, and Alzheimer's disease.  (*Id.* ¶¶ 2, 26-30).  Due to these health risks, in June 2015, the Food and Drug Administration ("FDA") announced that partially hydrogenated oils ("PHOs"), the primary dietary source of industrially-produced trans fats, are no longer generally recognized as safe ("GRAS") for use in human food.  (*Id.* ¶ 34 (citing Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650 (June 17, 2015))).  The FDA gave the food industry three years to remove PHOs from processed foods or receive approval for PHO use.  (*Id.*)

---

[1] The Court is not making any findings of fact, but rather summarizing the relevant allegations of the complaint for purposes of evaluating Defendant's motion to dismiss.

Despite the health risks associated with trans fats, Campbell Soup markets Healthy Request Gumbo as a healthy product. (*See id.* ¶¶ 35-45, 50-52). The Product's packaging includes the following labels: (1) "Healthy Request;" (2) "Heart Healthy;" (3) "COOKED WITH CARE;" (4) "Made with Lean Chicken Meat;" (5) American Heart Association ("AHA") "CERTIFIED" emblem and "Meets Criteria for Heart-Healthy Food;" and (6) vignettes of vegetables and grains. (*Id.* ¶ 50). The labeling omits information about the presence of trans fats and their health effects. (*Id.* ¶ 51). The Product's packaging also fails to disclose that Campbell Soup paid for the AHA certification emblem. (*Id.* ¶¶ 42-43, 54). Plaintiffs contend that the Product's labels, taken individually and as a whole, are false and misleading because they suggest that the Product is healthy when, in fact, the presence of trans fats makes it detrimental to health. (*Id.* ¶¶ 50, 52).

Plaintiffs purchased and consumed Healthy Request Gumbo in reliance on the health and wellness claims conveyed through the Product's labeling. (*Id.* ¶¶ 59-63). They have been injured by spending money on a product that was worth less than what Plaintiffs paid for it. (*Id.* ¶ 68). Had Plaintiffs known about the presence and detrimental health effects of artificial trans fat in Healthy Request Gumbo, Plaintiffs would not have purchased the Product or would not have purchased as much of it. (*Id.* ¶¶ 67, 69-71). Plaintiffs have also been injured by their increased risk of heart disease and other morbidity as a result of consuming Healthy Request Gumbo. (*Id.* ¶ 62).

Plaintiffs bring a complaint alleging violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"), and breaches of express warranties and the implied warranty of merchantability under California's Commercial Code.

/ / /
/ / /
/ / /
/ / /

## II. DEFENDANT'S MOTION TO DISMISS

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be granted where the pleadings fail to state a claim upon which relief can be granted.[2] When considering a Rule 12(b)(6) motion, the court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). A plaintiff must not merely allege conceivably unlawful conduct but must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. Request for Judicial Notice

Defendant asks the Court to take judicial notice of a copy of the packaging label for Healthy Request Gumbo in use during the class period. (*See* Request for Judicial Notice ("RJN") Ex. A). Federal Rule of Evidence 201 authorizes a court to take judicial notice of facts "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076

---

[2] Defendant also moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) on the basis that Plaintiffs lack standing. Because the Court considers the preemption argument under Rule 12(b)(6) controlling, the Court need not evaluate the complaint under Rule 12(b)(1).

(9th Cir. 2005). Here, Plaintiffs' entire case theory depends on the labels on Healthy Request Gumbo, to which they refer extensively in their complaint. Plaintiffs do not dispute the authenticity of the image provided by Defendant. Accordingly, the Court takes judicial notice of Exhibit A to the Declaration of Dale J. Giali.

### C. Analysis

Campbell Soup contends that Plaintiffs' claims are expressly preempted by the Poultry Products Inspection Act ("PPIA") and the Federal Meat Inspection Act ("FMIA").[3] It argues that where, as here, the U.S. Department of Agriculture ("USDA") has pre-approved a particular label, the PPIA and FMIA bar a state from deeming the label false, misleading, or otherwise unlawful.

Congress enacted the PPIA and FMIA to prevent the interstate distribution of adulterated and misbranded poultry and meat. 21 U.S.C. §§ 452, 602. The statutes prohibit the sale of products with false or misleading labeling or marking. 21 U.S.C. §§ 457(c), 607(d); *see also Del Real, LLC v. Harris*, 636 F. App'x 956, 957 (9th Cir. 2016) ("[W]e have previously interpreted the legislative history of the FMIA and PPIA as clearly show[ing] the intent of Congress to create a uniform national labeling standard."). Pursuant to those statutes, the USDA's Food Safety and Inspection Service ("FSIS") inspects and approves product labels. 9 C.F.R. § 412.1(a). A label must be approved before products bearing that label are sold in interstate commerce. *Id.* It is undisputed that FSIS approved Healthy Request Gumbo's label. (*See* Mot. at 5-6; Opp'n at 13; RJN Ex. A).

---

[3] Healthy Request Gumbo includes both chicken and meat (*see* RJN Ex. A), therefore the provisions of the FMIA and PPIA apply. *See* 21 U.S.C. § 601 *et seq.* (FMIA applies to "meat," which includes pork); 21 U.S.C. §§ 453(e), (f) (PPIA applies to "poultry" and "poultry products").

The PPIA and FMIA include identical express preemption provisions.[4] Those statutes preempt state law if (1) the state law imposes marking, labeling, packaging, or ingredient requirements; and (2) these requirements are "in addition to, or different than" than the requirements imposed under federal law. *See* 21 U.S.C. §§ 467(e) (PPIA); 678 (FMIA); *Barnes v. Campbell Soup Co.*, No. C 12-05185 JSW, 2013 WL 5530017, * 5 (N.D. Cal. July 25, 2013) (dismissing UCL, FAL, and CLRA claims against Campbell Soup's Natural Chicken Tortilla soup as preempted under the PPIA and FMIA). State statutory and common law can impose requirements that satisfy the first prong. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008). With respect to the second condition, a state requirement is additional or different than federal requirements if it is not "equivalent" or "parallel." *Riegel*, 552 U.S. at 330; *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447 (2005).

To determine whether Plaintiffs' claims are expressly preempted by these statutes, a court "must consider the theory of each claim and determine whether the legal duty that is the predicate of that claim is inconsistent" with federal law. *Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.*, 423 F.3d 1056, 1075 (9th Cir. 2005) (internal quotations omitted). Here, all of Plaintiffs' claims relate to mislabeling Healthy Request Gumbo as a healthy product. Thus, Plaintiffs seek to apply the UCL, FAL, CLRA, and Commercial Code in a way that would impose labeling requirements, implicating the first condition of the express preemption provisions. *Meaunrit v. The Pinnacle Foods Grp., LLC*, No. C 09-04555 CW, 2010 WL 1838715, at *6 (N.D. Cal. May 5, 2010).

The question then is whether the state law requirements are additional or different than the federal requirements. Several courts have held that they are, *see, e.g.*, *Meaunrit*,

---

[4] The Supremacy Clause of the U.S. Constitution empowers Congress to make federal laws that preempt state law. *See* U.S. Const. art. VI, cl. 2 ("[T]he Laws of the United States . . . shall be the supreme Law of the Land."). One type of preemption is express preemption, which occurs "when a [federal] statute explicitly addresses preemption." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015).

2010 WL 1838715, at *7, and this Court agrees.  The statutes prohibit "false or misleading" labels.  21 U.S.C. §§ 457, 607.  FSIS reviewed Healthy Request Gumbo's labeling to consider whether it is false or misleading and subsequently approved the label.  "The agency apparently found no fault" with Campbell Soup's labeling of Healthy Request Gumbo.  *Meaunrit*, 2010 WL 1838715, at *7.  "Nevertheless, a jury could conclude that the labels should disclose more information or employ different language, in which case it would introduce requirements in addition to or different from those imposed by the USDA."  *Id.*; *see also Riegel*, 552 U.S. at 325 (explaining that a jury would not evaluate a product's design in the same way as regulators).  Therefore, Plaintiffs' claims impose additional or different requirements than the PPIA and FMIA and are preempted.  Because Plaintiffs' claims are preempted, they cannot state a plausible claim and the motion to dismiss must be **GRANTED**.[5]

### III.  CROSS-MOTIONS FOR RULE 11 SANCTIONS

Defendant brings a motion for sanctions under Federal Rule of Civil Procedure 11, contending that Plaintiffs' attorney, Jack Fitzgerald, violated his certifications under that rule when he filed the complaint.  It contends that the complaint is legally baseless because Plaintiffs' claims are expressly preempted by federal law, a conclusion which numerous courts have recognized.  Campbell Soup argues that Mr. Fitzgerald was aware that the claims are preempted because, in pre-complaint correspondence, its counsel detailed the company's position to him in a letter.  According to Campbell Soup, Mr. Fitzgerald's attempt to challenge the straightforward application of the express preemption provisions is sanctionable.  It seeks an award of $25,000 for itself, which

---

[5] Plaintiffs argue that their claims are not expressly preempted because the USDA's label approval process is not sufficiently formal to have preemptive effect.  They do not present any case law to directly support this proposition.  Instead, they cite case law discussing other statutes and regulatory schemes.  Given this difference, the Court finds these cases unpersuasive.

represents part of its attorneys' fees in preparing the Rule 11 motion, and a penalty of $60,000 to be paid to the Court.

Plaintiffs responded with their own motion for Rule 11 sanctions.  They argue that their claims are not preempted because FSIS's allegedly cursory label review and approval process cannot be given preemptive effect.  They primarily rely on a 2015 Ninth Circuit decision about false food labeling, *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015).  That case did not concern the PPIA, FMIA, or FSIS approval.  Rather, it involved a different labeling law, the Food, Drug, and Cosmetic Act ("FDCA"), and the FDA's regulations and actions pursuant to that statutory authority.  Plaintiffs contend, however, that the reasoning of *Reid* should apply here.  They argue that because they present good arguments against preemption, Defendant has filed a frivolous sanctions motion, which itself is a sanctionable event.

Although the Court ultimately agrees that Plaintiffs' claims are preempted, their arguments against preemption are not frivolous or legally baseless.  Campbell Soup's motion for Rule 11 sanctions is **DENIED.**

The Court also **DENIES** Plaintiffs' cross-motion.  Defendant filed its motion in reliance on federal statutory law and case law finding similar claims preempted under the PPIA and FMIA, and it ultimately won on its preemption argument.  Its decision to file a Rule 11 motion was not baseless.

## CONCLUSION

Defendant's motion to dismiss is **GRANTED.**  (ECF No. 17).  Defendant's motion for Rule 11 sanctions is **DENIED.**  (ECF No. 18).  Plaintiffs' cross-motion for Rule 11 sanctions is **DENIED.**  (ECF No. 20).

**IT IS SO ORDERED.**

Dated:  March 21, 2017

Hon. Roger T. Benitez
United States District Judge